ST. LOUIS & SAN FRANCISCO RAILROAD COM-. PANY *v.* BROWN.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 399.   Argued April 19, 20, 1916.—Decided May 22, 1916.

*Minneapolis & St. Louis R. R.* v. *Bombolis, ante,* p. 211, followed to effect that a verdict in an action under the Federal Employers' Liability Act which is not unanimous, but which is legal under the law of the State, is not violative of the Seventh Amendment, and that such Amendment has no application to proceedings in state courts.

The fact that after the close of the testimony a plaintiff suing under both the Employers' Liability Act and the Safety Appliance Act withdrew his claim under the latter act, *held* in this case not to amount to a withdrawal of the testimony in regard to defective condition of the appliances and entitle defendant to direction of verdict on the ground of assumption of risk as the testimony was admissible under the issues based on the former act.

The fact that the state appellate court may have inaccurately expressed in one respect its reasons for affirmance, does not require this court to reverse, if, in fact, no reversible error exists.

The trial court having instructed the jury that if they found the plaintiff guilty of contributory negligence they should reduce his damages

in proportion to the amount of negligence attributable to him, failure to define the word proportion *held* in this case, not error.

THE facts, which involve the validity of a verdict and judgment for damages under the Employers' Liability Act, are stated in the opinion.

*Mr. C. B. Stuart, Mr. W. I. Cruce, Mr. L. S. Dolman, Mr. A. C. Cruce* and *Mr. M. K. Cruce* were on the brief, for the defendant in error.[1]

*Mr. W. F. Evans, Mr. R. A. Kleinschmidt* and *Mr. J. H. Grant* were on the brief, for the plaintiff in error.[1]

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Basing his cause of action upon the Federal Employers' Liability and Safety Appliance Acts, Brown, the defendant in error, sued to recover damages resulting from injuries alleged to have been occasioned by the negligence of the Railroad Company while he was in its employ and engaged in interstate commerce. At the close of the testimony the claim under the Safety Appliance Act was withdrawn and the case was submitted to the jury alone upon the Employers' Liability Act. There was a verdict and judgment for the plaintiff which was affirmed by the court below.

There was a sharp conflict between the testimony offered on behalf of the plaintiff and that on behalf of the defendant. The material facts disclosed by the plaintiff's testimony are as follows: Brown, a head brakeman and other members of a local freight train crew on the day in question were engaged in the yards at Ashdown, Arkansas, in making up an extra freight train to be taken out by an extra crew to Hugo, Oklahoma. The cars intended

---

[1] See note on p. 212, *ante.*

for the interstate train were placed on an east and west passing track east of a switch connecting a spur track which ran in a northeasterly direction past a stave mill. After placing some cars from the spur track on the passing track the engine returned to the spur track with several cars, some of which were to be left at the mill and the remainder brought out and coupled to those already collected for the train and standing on the passing track. Brown accompanied the cars and after cutting off those intended for the mill gave the engineer a signal to go ahead, the engine being headed west, and when the cars approaching the switch came opposite the car on the passing track to which the coupling was to be made, Brown crossed over from the spur track to the passing track to adjust the coupler on the car standing there. Finding the knuckle of the coupler closed, he attempted to open it with the lever at the side of the car, but it did not work. He then tried to manipulate the knuckle with his hand, but could get it only part way open and closing it, he stepped out to the north side of the track (the engineer's side). As the last car coupled with the engine was then just clearing the switch, he gave the engineer a stop signal and walked west to the switch stand to set the switch so that the engine and cars might be backed to make the coupling. By the time he had walked the short intervening distance and set the switch the engine had come to a stop with the rear car a few steps west of the switch. Intending then to adjust the coupler on the end of this car, Brown gave the engineer, who was watching him, a "spot" signal which indicated that he was not to move the engine until a further signal was given by Brown, and crossed over to the south side of the track in order to use the lifting pin to open the knuckle of the coupler. When the lever failed to work he stepped behind the car and was about to try to open the knuckle with his hand when he heard the cars ahead of him move. He at once turned to leave the

track, but was struck and knocked down by the car which was backed in disregard of the "spot" signal and his feet were caught under the wheels and crushed.

The assignments of error are numerous, but those requiring to be specially noticed may be disposed of under three headings:

1. The contention that rights of the Railroad Company guaranteed by the Seventh Amendment were violated because only nine of the twelve jurors concurred in the verdict is without merit. *Minneapolis & St. Louis R. R.* v. *Bombolis, ante,* p. 211.

2. A twofold contention is based upon rulings concerning the doctrine of the assumption of the risk. Upon the withdrawal by the plaintiff of his claim under the Safety Appliance Act the court charged the jury concerning assumption of the risk as follows:

"You are instructed that by accepting employment as a brakeman with the defendant, the plaintiff assumed the risk of such dangers as are ordinarily incident to the occupation he was engaged in, and if you find that his injury was occasioned by one of the incidents ordinarily attending the occupation upon which he was engaged, you should return a verdict for the defendant, but you are instructed in this connection that the plaintiff only assumed the risks that are ordinarily incident to the occupation in which he was engaged, and that he did not assume the risks that were attendant upon the negligence of a fellow servant."

(a) It is insisted that the abandonment of the claim as to a violation of the Safety Appliance Act necessarily withdrew all evidence tending to show that the couplers were defective and in the absence of such evidence the proof established as a matter of law that the plaintiff assumed the risk and the court should have directed a verdict in favor of the railroad. We think the proposition is plainly without merit. The testimony concerning

the condition of the couplers was clearly admissible under the issues based on the Employers' Liability Act as explaining the occasion for Brown's being on the track and as negativing negligence on his part. In so far as the contention implies that the withdrawal of the claim was a concession that the testimony relating to the couplers was false, we think the conclusion is wholly unwarranted. If we were to conjecture as to the reason for the abandonment of the claim under the Safety Appliance Act, we think it at least quite as probable that plaintiff's counsel were of opinion that in the situation disclosed by the plaintiff's testimony the Safety Appliance Act was inapplicable.

(b) In the court below it would seem that the correctness of the general instruction as to assumption of the risk which we have quoted as given by the trial court was challenged on a ground which has been abandoned because not here pressed. But it is said reversible error exists because the court below in passing upon such objection remarked that as the "defendant's liability to plaintiff grows out of a violation of a statutory duty, arising under an act of Congress," assumption of the risk was not a defense. This it is said was erroneous, first, because so far as the Safety Appliance Act was concerned, it was inapposite, as reliance upon that law by the plaintiff had been disclaimed, and second, because, under the facts it was open to find the existence of assumption of the risk depending upon conditions of fact not involved in the Safety Appliance Act. But we fail to see the pertinency of this objection, as there is now no contention concerning the correctness of the charge as to assumption of the risk upon which the case was submitted to the jury for their verdict. At best therefore the error asserted simply amounts to contending that because the court below may have inaccurately expressed in one respect its reasons for affirmance, that inaccuracy gives rise to the duty of

reversing the judgment although no reversible error exists.

3. It is contended that the court erred in charging the jury that in the event they found the plaintiff guilty of contributory negligence they should "reduce his damages in proportion to the amount of negligence which is attributable to him," since the court did not define the word proportion and hence failed to fix any standard by which the damages should be measured. The charge is clearly distinguishable from the instruction disapproved in *Seaboard Air Line* v. *Tilghman,* 237 U. S. 499, which is relied upon, since in that case the jury were in effect instructed to diminish the damages according to their conception of what was reasonable. The instruction given is almost in the identical language of the statute and while definition might have further conduced to an appreciation by the jury of the standard established by the statute, we think there was no error in the charge given, especially as the railroad company made no request for a charge clarifying any obscurity on the subject which it deemed existed. It is true the company made a request on the subject which the court declined to give, but that request, we are of opinion, taken as a whole instead of clarifying any ambiguity deemed to exist in the instruction which the court gave would have served to obscure it. There was no error therefore, leaving aside the question whether the requested instruction did not contain matters which if given would have been erroneous.

Although we have examined the whole record and as the result of that examination conclude there is no ground for reversal, we have not particularly noticed subjects embraced by some of the assignments but not pressed in argument and others not embraced by the assignments but indirectly referred to in the argument.

*Affirmed.*