## 10709.

### TEMPLETON v. C. & W. C. RY. CO.

#### (108 S. E. 363)

1.  TRIAL—CONFLICTING EVIDENCE NOT CONSIDERED ON MOTION TO DIRECT VERDICT.—On motion to direct verdict for defendant only the facts fairly inferable from plaintiff's evidence without regard to conflict raised by defendant's evidence, is to be considered.

2.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE AS PROXIMATE CAUSE OF INJURY TO BRAKEMAN HELD QUESTION FOR JURY.—There being evidence that cars put on a sidetrack were left without the brakes being set by order of the conductor, direction of verdict for defendant railroad in an action for injury to the brakeman from the cars rolling down to the main track, asked on the ground that his negligence was the sole proximate cause of the accident, was properly refused.

3.  TRIAL—TESTIMONY NOT TREATED AS UNREASONABLE ON MOTION FOR DIRECTED VERDICT.—Testimony of several witnesses that the conductor ordered cars left on a sidetrack without the brakes being set, will not be disregarded as unreasonable on motion to direct verdict.

4.  APPEAL AND ERROR—ADMISSION OF HEARSAY IN VIEW OF ITS NATURE HELD HARMLESS.—Admission in action for injury to a brakeman in a railroad accident of testimony of his witness that he heard a railroad man whom he did not know say that, while he was not at fault, he expected to lose his job, was harmless, it being rather exculpatory and not inculpatory of any one.

5.  EVIDENCE—TESTIMONY OF WHAT WITNESS HEARD, SAID SOME TIME AFTER THE ACCIDENT, HEARSAY, AND NOT RES GESTAE.—Testimony of plaintiff's witness in an action for injury to a brakeman, that he heard the engineer ten or fifteen minutes after the accident say that the conductor caused the collision by an order he gave to plaintiff, was hearsay and not part of the res gestae.

6.  APPEAL AND ERROR—IMPROPER ADMISSION OF EVIDENCE OF SOME PROBATIVE FORCE PRESUMPTIVELY PREJUDICIAL.—Admission of improper evidence of some probative force on a material issue of fact is presumptively prejudicial.

7. APPEAL AND ERROR—ERROR IN ADMISSION OF EVIDENCE HELD NOT CURED BY DIRECTION TO STRIKE AND DISREGARD.—Error in admitting evidence of statement of engineer some time after the accident to plaintiff brakeman that the accident was due to the fault of the conductor in calling plaintiff brakeman down from the car, on the establishment of which fact plaintiff's case depended, *held* not cured by the Judge later directing the stenographer to strike out "such declarations as the engineer and conductor made" and then telling the jury, "Don't consider that testimony that I told the stenographers to strike out."

8. APPEAL AND ERROR—NOT APPELLANT'S DUTY TO CALL TRIAL JUDGE'S ATTENTION TO INSUFFICIENCY OF WITHDRAWAL OF EVIDENCE.—That appellant may complain that the prejudice from admission of improper evidence was not removed, it was not necessary that he should have called the trial Judge's attention to the insufficiency of his withdrawal thereof from the jury's consideration.

9. TRIAL—CLEARER INSTRUCTION, IF DESIRED, SHOULD BE REQUESTED.— If the instruction as to the rule for diminution of damages under the Federal Employers' Liability Act (Comp. St. § 8657-8665) in case of contributory negligence be thought not sufficient, request for further instruction should be made.

10. NEGLIGENCE—RECOVERY UNDER FEDERAL EMPLOYERS' LIABILITY ACT NOT BARRED BY GROSS CONTRIBUTORY NEGLIGENCE.—Under the Federal Employers' Liability Act (Comp. St. §§ 8657-8665), all recovery is not barred by the fact of the employer's contributory negligence being gross and that of the employer being slight.

Before BOWMAN, J., Allendale, February, 1920. Reversed and new trial ordered.

Action by Isaac Templeton against Charleston & Western Carolina Railway Co. Judgment for plaintiff and defendant appeals.

*Messrs. Harley & Blatt* and *F. Barron Grier,* for appellant, cite: *Statements of Bing were not part of res gestae and not within scope of his agency and were incompetent*: 53 S. C., 448; 27 S. C., 64; 62 S. C., 129. *Error in admission of testimony not properly cured by Judge*: 108 S. C., 195; 180 U. S., 552; 172 U. S., 534; 156 U. S., 361; 120 U. S., 438. *Error in charging jury on facts that would constitute negligence*: 94 S. C., 341; 76 S. C., 63; 71 S. C.,

159. *Where incompetent testimony is admitted on vital point in a case, a new trial should be granted*: 32 S. C., 547; 23 S. C., 105; 94 S. C., 147. *Contradictory charge is ground for new trial*: 102 S. C., 413; 104 S. C., 387. *Testimony of Bing incompetent*: 5 S. C., 369; 62 S. C., 129; 19 S. C., 353.

*Messrs. John J. Jones, Henry C. Roney* and *J. Henry Johnson,* for respondent, cite: *Conflicting testimony, and issue for the jury*: 76 S. C., 275; 79 S. C., 429; 102 S. E., 856; 17 Ga. App., 267; 241 U. S., 261; 240 U. S., 464; 241 U. S., 310. *Where testimony is ruled out and jury instructed not to consider it, there is no error to be considered on appeal*: 3 Cent. Dig., Sec. 4179; 1A Am. Dig., 167, Sec. 1053; 90 S. E., 119, (N. C.); 114 N. E., 227, (Ind.); 161 N. W., 491 (Iowa); 99 Kan., 740; 195 S. W., 399 (Ark.); 161 Pac., 838 (Kan.); 164 Pac., 229 (Wash.); 123 U. S., 524; 31 Law Ed., 258; 134 Ga., 137; 90 S. E., 32; 67 S. E., 899. *Remarks as to settlement harmless where stricken out*: 89 S. E., 140; 160 N. W., 330; 218 U. S., 245. *Burden on appellant to show prejudice*: 64 S. E., 703; 68 S. E., 848; 86 S. C., 162; 87 S. C., 18; 88 S. C., 91; 66 S. E., 823; 66 S. E., 465. *Effect of violation of rules of company, through ignorance or in emergency*: 65 E., 155; 82 S. C., 528; 85 S. E., 463; 102 S. E., 856. *Objection to charge should be made at trial*: 241 U. S., 223. *Charge on negligence and contributory negligence*: 241 U. S., 223; 240 U. S., 66; 229 U. S., 114; 214 Fed., 952; 214 Fed., 948. *Exception as to charge on facts too general*: 59 S. C., 529. *Tables of expectancy properly admitted*: 97 S. E., 848; 79 S. E., 710. *Assumption of risk and contributory negligence under Federal Employees' Liability Act*: 66 S. C., 482; 103 S. E., 150; 232 U. S., 95; 241 U. S., 310; 235 U. S., 389; 232 U. S., 248.

September 14, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from a judgment of $5,000, entered upon a verdict in favor of the plaintiff, on account of personal injuries sustained by him in a collision between the engine upon which he was temporarily riding and a string of box cars, which had been placed upon a side track, and which ran down the side track, "side-wiping" the engine on the main line as it passed the switch. The injury occurred near Appleton, in Allendale County, on December 14, 1917. The trial was before Judge Bowman and a jury at Allendale, February 4, 1920. · At the close of all of the evidence the defendant moved for a directed verdict in its favor upon the ground that the plaintiff's self-negligence (sic?) was the direct and proximate cause of his injury." The plaintiff was, at the time of his injury, a brakeman employed by the defendant, and was then engaged in interstate commerce;· facts that require the application of the Employers' Liability Acts of Congress (Comp. St.. §§ 8657-8665).

The appeal involves three subjects of consideration: (1) The motion for a directed verdict; (2) the admission of certain testimony; (3) the Judge's charge.

1. *The Motion for a Directed Verdict.*—The evidence on behalf of the plaintiff, with every reasonable inference in his favor that may be drawn therefrom, shows the following facts: The freight train with 30 odd cars left Augusta, Ga., on the morning of December 14, 1917, bound for Yemassee, S. C., with the usual complement of employees, the plaintiff being a brakeman; the train stalled at a hill a few miles from Appleton, a station between Augusta and Allendale; it became necessary to detach the engine and 12 cars, run them down to Appleton, pass the depot, and back them into a side track at a switch a few hundred yards beyond; the plaintiff went with the detached portion of the train; arriving at the switch the plaintiff turned it for the side track and the cars were backed in; the plaintiff mounted the lead car of the cut off cars

for the purpose of fixing the brakes to prevent them running back on the main line; he had never worked upon this side track before, and knew nothing of the grade; as a matter of fact, the side tract was on a down grade in the direction of the switch; as he had his hands on the brake wheel to put on the brakes, the conductor called to him that the cars would stand all right without setting the brakes—to hurry up and come down, that a passenger train was almost due, and they must get the part of the train left at the hill into the side track out of its way; in the meantime the engine had pulled out on the main line and stopped below the switch, that the switch might be turned to the main line for the return trip to where the other cars had been left; the plaintiff obeyed the direction of the conductor, came down off of the cars without setting the brakes, and, while in the act of boarding the engine, as it passed the switch, was caught between the engine and the cars which had escaped, and, rolling down the side track, "side-wiped" the engine at or near the switch.

Many of the facts above detailed are disputed by the defendant, but the above statement is based upon the facts which are fairly inferable from the plaintiff's testimony, without regard being had to such conflict, as we understand the rule to be in such motions.

No question is raised in the ground of the motion as to contributory negligence of the plaintiff, which, under the liability acts, could be so urged, nor as to the assumption of the risk by the plaintiff; the only ground for the motion is that the negligence of the plaintiff was the sole proximate cause of the injury.

Such a conclusion would be impossible from these facts if established to the satisfaction of the jury. The most that the defendant could possibly be entitled to would be the submission to the jury of the issue whether or not, upon the establishment of the truth of such facts, its negli-

gence ought to be concluded by the jury; and, if so, the further issue whether or not the plaintiff was guilty of contributory negligence or assumption of risk, in obeying an order so obviously fraught with peril that a person of ordinary prudence would not have undertaken to obey it.

The conductor was the master of the train—the alter ego of the railroad company; it was the duty of the plaintiff to obey his orders; if he knew that the side track was on a down grade, he knew that without brakes the cars would roll down the track onto the main line; if he ordered the plaintiff not to set the brakes, it was an act of negligence; if the plaintiff knew these facts—knew of the defects and appreciated the danger—he assumed the risk, unless he acted upon the orders of the representative of the master on the spot, under circumstances which, as above stated, would not charge him with negligence in obeying a dangerous order.

Unfortunately for the defendant, so far as this motion is concerned, the inference of its negligence is against it, and the inference of the plaintiff's freedom from both contributory negligence and assumption of the risk is in his favor.

We are asked to hold that the explanation given by plaintiff of his failure to set the brakes is so absurd and unreasonable as not to amount to even a scintilla of evidence; that it is without even a probability that the conductor should have given such an order. The reasonableness or probability of the truth of testimony is not the test of its admissibility. The plaintiff and several witnesses testified that such an order was given by the conductor; it was denied by the conductor, and this is an issue of fact for the jury.

We think, therefore, that the Circuit Judge was right in refusing to direct a verdict for the defendant.

2. *The Admission of Certain Testimony.*—The testimony objected to was that of two witnesses, Osie Bing and N. H. Walker, offered by the plain-

tiff. Walker was allowed to testify that he heard some one—a railroad man whom he did not know—say that, while he was not at fault, he expected to lose his job; that he would not have had the accident happen for $1,000. The Circuit Judge allowed the testimony, over the defendant's objection, with the reservation that he would strike it out if, upon consideration, he should determine that it was inadmissible. The defendant's objection to the testimony was that it was hearsay, and not a part of the res gestae. While the testimony was clearly inadmissible, the substance of it was rather exculpatory of himself than otherwise, and not inculpatory of any one. The admission of it was therefore harmless, and need not be further considered.

The testimony of Bing, however, was quite different. He was allowed to testify that he heard the engineer say, ten or fifteen minutes after the accident, that he was going to lose his job, that the conductor caused the collision by calling the plaintiff to come down from the car. Before the testimony was allowed, the defendant objected upon the ground that the declaration sought to be put in evidence was not a part of the res gestae. The Circuit Judge sustained the position thus taken, but upon the suggestion of counsel for plaintiff, "Inasmuch as we charge this injury to the negligence of the conductor and the engineer, we contend that a statement made by the engineer as to whose fault it was is competent," he ruled: "I am going to let it come in right upon that point." No reservation was made by the Circuit Judge that he would strike it out if, upon consideration, he should determine that it was inadmissible, as he did with reference to the testimony of Walker.

Two other witnesses were put up by the plaintiff upon the facts of the case, and then the witness Walker was put up. After the conclusion of his testimony, in which the statements referred to above were allowed, the Court adjourned for the night. Immediately upon convening the next morning the following occurred:

"The Court: Mr. Stenographer, after considering the matter, I want you to strike out such declarations as the engineer and conductor made. I will rule it out. * * *, Gentlemen of the jury, don't consider that testimony that I told the stenographer to strike out a while ago. That is out of the case."

The appellant takes two positions in reference to this matter: (1) That, the testimony being plainly inadmissible, the Circuit Judge should not have allowed it to go to the jury at all, and that the error was not cured by directing the jury the next morning not to consider it; (2) that in his remarks to the stenographer in the presence of the jury, that in directing them to disregard the testimony, he asserted as a fact that declarations had been made by the engineer and conductor.

The testimony was inadmissible and out of the case for three reasons: (1) It was hearsay and not a part of the res gestae (*Aiken v. Telegraph Co.,* 5 S. C., 369; *Piedmont Co. v. Ry. Co.,* 19 S. C., 353; *Petrie v. Ry. Co.,* 27 S. C., 64; 2 S. E., 837; *Garrick v. Ry. Co.* 53 S. C., 448: 31 S. E., 334; 69 Am. St. Rep., 874; *Salley v. Ry. Co.,* 62 S. C., 129; 40 S. E., 111); (2) the Circuit Judge distinctly ruled that it was not a part of the res gestae, and there is no exception to his ruling; (3) he subsequently ruled it out altogether, and there is no exception to that ruling.

It follows as a legal presumption that the admission of improper testimony of some probative force upon a material issue of fact in the case is prejudicial. The question presented in this appeal is whether or not this presumption has been overcome. Has the error been cured by the effort of the Circuit Judge to correct it?

No clearer statement of the guiding principles in determining this issue can be found than that made by this Court in *Cable Piano Co. v. R. Co.,* 94 S. C., 143; 77 S. E., 868:

"It certainly will not do to lay down the rule that, in every case, where incompetent or irrelevant testimony is admitted, and afterwards stricken out, with proper instructions from the Court to the jury to disregard it, a new trial must be granted. On the other hand, it would, perhaps, be equally unsafe to say that in no such case should a new trial be granted. The character of the testimony, the circumstances under which it was offered and admitted, the nature of the case being tried, the other testimony in the case, and perhaps other matters which might be suggested, should be considered by the Court in deciding whether the party against whom such testimony was admitted was so prejudiced thereby as to call for the exercise of the discretion to grant a new trial."

The "character of the testimony," "the circumstances under which it was offered and admitted," "the nature of the case being tried," "the other testimony in the case," and, we may be permitted to add, the effectiveness of the withdrawal, should be considered, etc.

The plaintiff's case depends absolutely upon his establishing the fact that, after he mounted the car to set the brakes, presumably knowing, or at least believing, that it was necessary to do so to prevent them from rolling out of the side track, with his hands on the brakewheel for that purpose he was called away from that duty by the conductor, who told him that the cars would stand all right without setting the brakes; to hurry up and come down; that a passenger train was almost due, and that they must get the part of the train left at the hill into the side track, out of its way.

The testimony of Bing, to the effect that the engineer declared that the accident was due to the fault of the conductor in calling the plaintiff down from the car, was directed at the very nerve of the plaintiff's case; nothing could have been so effective as laying the fault at the door of the representative of the defendant on the spot—the altar

ego of the railroad company—particularly in view of the erroneous ground upon which the testimony was admitted —that, as the plaintiff charged the injury to the negligence of the conductor and engineer, the statement of the engineer as to whose fault it was should be allowed. If the action had been against the engineer and conductor, and not against the railroad company, the declarations of the engineer exculpating himself and inculpating the conductor would not have been admissible.

The circumstances attending the withdrawal of the testimony from the jury's consideration show an entirely inadequate explanation and correction of the error. The remarks of the Circuit Judge were addressed, in the first instance, not to the jury, who were supposed to receive the explanation and correction, but to the stenographer, the clerical arm of the Court, whose duty it was to take down the entire proceedings of the trial, and to strike out nothing, even upon the order of the Circuit Judge. It cannot be assumed that the jury would give the same attention to a direction by the Judge to the stenographer that they would give to a direct, explicit explanation and correction given by him to them. The instruction given to them was simply by reference to what he had directed the stenographer to do; whether they heard it, heeded it, or understood it is a matter of conjecture. The erroneous testimony was not identified, as it should have been, by the name of the witness and the substance of his testimony, with an explanation to the jury of the error in admitting it, and a direction to erase it from their minds; the only identification indicated was erroneous, for there were no declarations of the conductor testified to, and the remarks of the Circuit Judge assumed the fact that declarations had been made; not that they had simply been testified to.

It might be suggested that it was the duty of the appellant to call the Circuit Judge's attention to the insufficiency of his withdrawal of the testimony

from the consideration of the jury.   We do not conceive that such was the duty of the defendant.   If an error in the admission of the testimony was made, as must be conceded, it was as much the duty of the Circuit Judge to correct it properly as to correct it at all, and as much the duty of the plaintiff's counsel to see that that was done as of the defendant's.   While it is a salutary rule that an attorney should not be allowed to sit silent under an error which he ought to correct and take the chances of a favorable verdict or an appeal, this rule will apply in the present case to the opposing counsel as well; he should not be allowed to sit silent under an inadequate withdrawal and take the chances of an imperfect effacement of the testimony.   The high character of the attorneys on both sides of this case forbids the imputation of an unworthy motive to either; we are discussing the matter entirely in the abstract.

The proponent of evidence vouches for its admissibility, and the utmost good faith is expected of him.   The propounding of an improper question, to which objection is sustained, may lodge in the minds of the jury a possible answer, the effect of which may be difficult to eradicate; certainly an improper question allowed to be answered is worse; and where the proponent has brought about this condition, he cannot justly complain that his adversary has not been alert and efficient in his efforts to neutralize the error.

In the case of *Rookard v. Ry.*, 84 S. C., 190; 65 S. E., 1047; 27 L. R. A., (N. S.), 435; 137 Am. St. Rep., 839. certain inadmissible testimony was given before objection was made.   This Court held that there was no error in allowing it to remain in until counsel could have the opportunity to present the authorities, "for all the harm that could be done by its getting to the jury had already been done."

"Nor can we say that the error was cured by its 'admission, subject to objection.'   That may be done in some

cases when the Court is to pronounce the judgment. But, in a trial by jury, such evidence may have its effect simply by being admitted at all." *National Bank v. Anderson,* 32 S. C., 538, 547; 11 S. E., 379, 383.

The circumstances under which the testimony was admitted and the nature of the testimony were calculated to make a deep impression upon the minds of the jury, and so lasting as not to be effaced except by an equally careful and impressive explanation and correction.

We have already referred to the importance of the issue of fact to which the testimony was directed. When the question of admissibility of the testimony came up, it appearing that the declarations of the engineer were made some ten or fifteen minutes after the collision occurred, the Circuit Judge promptly ruled that it was not a part of the res gestae; but, responding to the suggestion of counsel for the plaintiff that, as the case rested upon the negligence of the conductor and engineer, the statement of the engineer as to the responsible cause of the collision was admissible, the Circuit Judge, after argument of counsel, admitted the testimony upon that ground. The impression created by this ruling, which was never corrected, except inferentially, necessarily was very great.

After stating the general rule that errors are cured by withdrawal, the Court, in *Throckmorton v. Holt,* 180 U. S., 552, 567; 21 Sup. Ct., 474, 480 (45 L. Ed., 663), an exceedingly interesting case, says:

"But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error."

In *Oates v. U. S.,* 233 Fed., 201, 204; 147 C. C. C. A., 207, 210, Circuit Judge Woods, formerly an honored member of this Court, declares as the judgment of the Court:

"The exception to this rule is that the incompetent evidence will be regarded harmful, notwithstanding its subsequent withdrawal from the jury, if it was so impressive that it probably remained on the mind of the jury and influenced their finding."

That the testimony in the case was impressive at the time of its admission there can scarcely be a doubt; that it probably remained on the mind of the jury, we must assume from the inadequate explanation and admonition of the Circuit Judge, and the consequent imperfect effacement. Where incompetent and improper evidence is calculated to make a strong impression upon the minds of the jurors, the error in the admission is not cured by a subsequent withdrawal of the evidence from the jury. *Whittaker v. Voorhees,* 38 Kan. 71; 15 Pac., 874.

"In an action by a servant against his master for injuries alleged to have been caused by defective appliances, the error of admitting in evidence a statement of the defendant's foreman is not cured by instructing the jury to disregard it." *Whalen v. Gas Co.,* 32 N. Y. St. Rep., 48; 10 N. Y. Supp., 105.

It is held in *Sulkowski v. Zyndia,* 160 Mich., 7; 124 N. W., 536; 136 Am. St. Rep., 414, that the admission of improper testimony is not cured by its exclusion the following day, "as the jurors must have had the evidence in mind during the remainder of the trial and argument of counsel."

Error in admitting incompetent evidence is not cured by giving an instruction which does not clearly indicate what evidence is to be disregarded. *Swank v. Elwert,* 55 Or., 487; 105 Pac., 901.

"The admission of irrelevant and incompetent testimony so hurtful to the litigant by reason of its effect upon the jury, relying upon the withdrawal of it to repair the damage, is a dangerous practice, and not to be com-

mended." *Elliott v. Ferguson,* 37 Tex. Civ. App., 40; 83 S. W., 56.

In the Throckmorton case, the Court further says:

"There may also be a defect in the language of the attempted withdrawal, whether it was sufficiently definite to clearly identify the portion to be withdrawn. * * * In such a case as this and under the particular facts herein we think the names of the witnesses should have been given, and the specific evidence which was given by them and which was to be withdrawn should have been pointed out."

"In any event in order to effect a cure, the withdrawal must be as broad as the admission, sufficiently definite to identify clearly the evidence to be withdrawn, and so explicit and unequivocal as to preclude the inference that the jury may have been influenced thereby." 4 Corp. Jur., p. 989, § 2972.

Tested by these rules, it cannot but appear how inadequate the explanation and correction in this instance were; how diluted was the emetic compared with the strength of the poison.

We are mindful of the practical necessity in the conduct of jury trials to allow great latitude to the discretion of the presiding Judge; it is essential to the administration of justice and the end of litigation. We appreciate the sentiment that justice delayed is justice denied. But in an instance of procedure which falls so far short of reasonable precautions to explain and correct an error, which at the time of its commission was of most serious consequence to the interests of a litigant, the error will be corrected in this Court.

3. *The Judge's Charge.*—The first objection to the charge is that it was misleading, contradictory, and confusing upon the subject of the diminution of damages on account of contributory negligence, under the Federal Act. The rule approved by the Supreme Court of the United States in the case of *Ry. Co. v. Brown,* 241 U.

S., 223; 36 Sup. Ct., 602; 60 L. Ed., 966, which it declares is in practically the words of the statute, is this: In the event that the jury finds the plaintiff guilty of contributory negligence, they must reduce his damages in proportion to the amount of negligence attributable to him. Considering the portion of the charge immediately preceding that excepted to, and the defendant's request to charge which was allowed, in connection with the portion excepted to, the Circuit Judge committed no error of law. If the law, thus technically correct, was not, in the conception of counsel, sufficiently intelligible to the jury, the way was open for them to prefer a further request "clarifying any obscurity on the subject" which they deemed to exist.

The second objection to the charge is alleged error in stating that the plaintiff would be entitled to recover although his negligence was gross, and that of the defendant slight. We find nothing in the act, and the appellant has cited no authority, which would indicate error in this proposition. While the statute makes no distinction between degrees of negligence it certainly does not debar a plaintiff from all recovery in case his contributory negligence should be gross, and it certainly contemplates the possibility of the negligence of one being greater than that of the other. If, therefore, the plaintiff's negligence should be gross and the defendant's slight, the plaintiff would suffer most in the diminution of his damages. We do not see that the defendant has anything to complain of in this.

The writer of this opinion was not a member of this Court at the time the appeal was argued; it is his understanding from the records in his possession that the fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth, fourteenth, and fifteenth exceptions were abandoned.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE GARY, JUSTICE FRASER and MR.
R. E. BABB, Acting Associate Justice, concur.

MR. JUSTICE WATTS (dissenting) : I dissent from the
opinion of Mr. Justice Cothran. I see nothing in the excep-
tions to show such prejudicial error that a new trial should
be granted. The opinion requires a Circuit Judge to meas-
ure up in learning, skill, readiness, and infallibility, that
no Judge I have ever practiced before or been associated
with possesses. · The opinion is manifestly unfair and un-
just to the Judge. It practically requires him, when he
makes a mistake, to grant a new trial. He is not allowed
to correct his mistakes, as Judge Bowman did in this case.

The plaintiff was injured December 14, 1917; a trial
was had February 4, 1920. Certain evidence was ad-
mitted on the part of the plaintiff over objection. Later
his Honor told the jury to disregard it. The plaintiff
finally got a verdict. I am not at all certain that his Honor
was not right in holding the evidence competent in the
first instance, but when he concluded to strike it out, no
exception was taken, and that goes out of the case. Next
morning, when Court convened and the case was ready to
proceed, his Honor turned to the official stenographer—and
every one knows who has any experience in Court and the
trial of cases, how still the courthouse is when the Judge
speaks, and how alert and watchful the jurors who are
trying the case are, as well as lawyers and litigants in the
case—the Judge then made his statement to the stenogra-
pher, and announced he had concluded to strike out the ev-
idence, and told the jury to disregard it.

The jurors understood, and the lawyers on both sides un-
derstood his Honor, and, if the defendant's attorneys
wanted further instructions on striking out this ev-
idence, they should have asked for it; it was unjust
to his Honor not to do so, and later get an advantage,
which is to result in a new trial. This plaintiff has been

injured nearly four years, and can well complain of the law's delay and the uncertainties of Courts of justice. To grant a new trial is a reflection on the intelligence and integrity of jurors. Jurors try to do what is right, and follow the instructions of the Judge.

While a new trial should be at all times granted for prejudicial error, yet the error should have substance, and be actually prejudicial. In the present case, if his Honor had harangued the jury at length, he could not have made them aware more fully than he did, that they were to disregard the evidence mentioned by him, and that it was not to be considered by them. And if attorneys were not satisfied with what he said they should have asked him, for further instructions.

I see no harmful error on the part of his Honor. His error, if he was in error, was a trifling one, and a new trial, under all the circumstances of the case, is wrong, and works injustice and hardship on the plaintiff.

For these reasons I think the judgment should be affirmed.