IN RE CLARK, A MINOR CHILD

No. 136

(Filed 17 August 1981)

**1. Parent and Child § 1— Termination of Parental Rights Act—no provision for counsel—Act constitutional**

The trial court erred in concluding as a matter of law that the Termination of Parental Rights Act unconstitutionally deprives the parent and the child of the right to counsel in that it makes no provision for appointment and payment of counsel in a case where the indigent respondent mother is either a minor or not *sui juris* or both and where the minor child is obviously indigent, since, under G.S. 1A-1, Rule 17(c) and traditional practice of this State, the minor parties to a civil action or a special proceeding must be represented by a guardian ad litem who may defend *pro se* or employ counsel; a traditional practice has been to appoint licensed attorneys as guardians ad litem; and in this case both the indigent mother and child were represented by competent and conscientious counsel and were therefore in no way deprived of the right to counsel.

**2. Parent and Child § 1— termination of parental rights—indigent parent—no right to counsel**

    In proceedings to terminate parental rights brought prior to 9 August 1981, the effective date of an amendment to G.S. 7A-289.23 requiring the appointment of counsel for any indigent parent, where other circumstances do not dictate to the contrary, an indigent parent is not entitled to appointment of counsel as a matter of law; rather, the right to appointed counsel must be determined on a case by case basis.

**3. Attorneys at Law § 9— proceeding to terminate parental rights—attorney's fees**

    Attorney's fees allowed by the court for attorneys appointed in proceedings to terminate parental rights (whether as separate counsel or as guardian ad litem) brought before the effective date of Chapter 966 of the Session Laws of 1981 shall be borne by the Administrative Office of the Courts.

**4. Parent and Child § 1— failure to provide reasonable child support—termination of parental rights—statute constitutional**

    The trial court erred in dismissing a proceeding for the termination of parental rights on the ground that G.S. 7A-289.32(4), which permits termination when the child is in the custody of a department of social services and the parent has failed to pay a reasonable portion of the cost of child care for six months preceding filing of the petition, is unconstitutionally vague and overbroad, since the phrase "reasonable portion of the cost of care for the child" is, by all normal standards, understandable by people of common intelligence without any necessity of guessing as to its meaning or differing as to its application; the phrase contains words of such common usage and understanding as to give parents notice of their responsibilities and of the type of conduct which is condemned; and the phrase provides boundaries sufficiently distinct that judges may interpret and administer it uniformly.

**5. Jury § 1; Parent and Child § 1— proceeding to terminate parental rights—no right to jury trial**

    The trial court erred in concluding that the Termination of Parental Rights Act was unconstitutional because it deprived the parties of trial by jury, since the parties are entitled to trial by jury only if such right existed by virtue of the State Constitution; under Art. I, § 19 of the Constitution trial by jury is guaranteed only where the prerogative existed at common law or by statute at the time the Constitution was adopted; and proceedings to terminate parental rights in children were unknown at common law and did not exist by statute until the adoption of the Act in 1969.

APPEAL from an order of *Williford, Judge,* entered at the 7 October 1980 Session of District Court, HERTFORD County dismissing a petition brought by the Hertford County Department of Social Services (hereinafter "DSS") seeking to terminate the parental rights of the respondent-mother Vernice Clark in and to her minor child Kim Clark. This Court allowed the petition of the

DSS for discretionary review prior to determination by the Court of Appeals by order dated 7 April 1981.

*Revelle, Burleson, Lee & Revelle, by L. Frank Burleson, Jr., attorney for petitioner appellant.*

*Jenkins & Jenkins, by Robert C. Jenkins, guardian ad litem for respondent-appellee Kim Clark, a minor child.*

*Gram and Baker, by Ronald G. Baker, guardian ad litem for respondent-appellee Vernice Clark, a minor parent.*

*Rufus L. Edmisten, Attorney General, amicus curiae, by Blackwell M. Brogden, Jr., Associate Attorney.*

MEYER, Justice.

At issue in this case is the constitutionality of Subsection (4) of G.S. 7A-289.32 which permits the termination of the parental rights of a parent when the child has been placed in the custody of a county department of social services and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child. We find no constitutional defect in G.S. 7A-289.32(4). The conclusion of the trial judge that the statute is unconstitutional was therefore erroneous, and his dismissal of the petition for termination of parental rights for failure to state a claim upon which relief may be granted is reversed.

This appeal concerns the dismissal of an action brought by a county department of social services to terminate the parental rights of the biological mother and putative father of a minor child approximately twenty-two months old born out of wedlock. The child has been in the custody of the DSS since it was approximately ten months old. Williford, J., dismissed the petition of the DSS upon his findings and conclusions of three independent constitutional defects in the general statutes authorizing the petition, the Termination of Parental Rights Act, Chapter 7A, Article 24B, of the General Statutes (hereinafter "the Act"). The default of the putative father has been entered and his rights are not a subject of this appeal.

The factual background to the present appeal is as follows: On 2 February 1979 as the result of DSS filing a juvenile petition alleging that Kim Clark, at that time ten months old, was a

neglected child as defined by G.S. 7A-278(4), and alleging that Vernice Clark, the child's mother was a minor and mentally deficient, Judge Williford issued an order placing the child's physical custody with DSS. The order was executed by the Hertford County Sheriff's Department on that same date and Kim Clark was placed in a foster home by DSS.

A hearing was held on 16 February 1979 at which Vernice Clark was present and at which Kim Clark was represented by a court-appointed attorney. The court found that Kim Clark was a neglected child as defined by G.S. 7A-278(4) and custody of Kim Clark was continued in the DSS.

DSS filed a motion for review, and on 22 August 1979, Judge Williford continued custody in DSS and the child remained in foster care.

On 26 February 1980, and in a separate proceeding, DSS petitioned the Hertford County District Court to terminate the parental rights of the biological father, McCoy Futrell, and of the respondent-mother Vernice Clark in their minor child, Kim Clark.

DSS relied only upon G.S. 7A-289.32(4) as grounds for termination of the mother's parental rights to her minor child and alleged:

> 11. The child has been placed in the custody of the Hertford County Department of Social Services and the mother, for a continuous period of six months next preceding the filing of this petition, has failed to pay a reasonable portion of the cost of care for the child.

In an *ex parte* order, Long, C.J., of the District Court for the Sixth Judicial District, made the preliminary jurisdiction determination required by G.S. 7A-289.23.

Even though the mother of the child was over fourteen years of age, she was an infant, and DSS, upon information and belief, alleged that she was not *sui juris*. In his *ex parte* order determining jurisdiction, Judge Long found as facts that Vernice Clark was an infant, was not *sui juris*, and had no general or testamentary guardian in North Carolina. Judge Long thereupon appointed Ronald G. Baker, an attorney at law, as guardian ad litem for Vernice Clark.

The petition, the *ex parte* order, and the summons were duly served upon Vernice Clark and upon her guardian ad litem.

Vernice Clark's guardian ad litem in apt time filed an answer denying material allegations of the petition. Pursuant to G.S. 7A-289.29(b), Judge Williford appointed Robert C. Jenkins, an attorney at law, as guardian ad litem for Kim Clark, the minor child. A copy of the petition and a copy of the answer of Vernice Clark's guardian ad litem were mailed to Mr. Jenkins by the Clerk of Superior Court, Hertford County and to the other parties.

The special hearing required by G.S. 7A-289.29(b) was scheduled and rescheduled several times. Meanwhile, Vernice Clark's guardian ad litem was permitted by the court to file an amendment to her answer, and Kim Clark's guardian ad litem was permitted by the court to file an answer after the original time for answering had expired.

The special hearing ultimately was scheduled for 15 August 1980 at the Hertford County Courthouse, Winton, North Carolina, before Judge Williford presiding at that Session of District Court, Hertford County.

At the call of the matter for hearing, each of the guardians ad litem orally moved Judge Williford pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure to dismiss the entire proceeding as to the mother and the child on the grounds that the petition failed to state a claim upon which relief can be granted because the Act contravenes the Constitutions of the State of North Carolina and of the United States in that (1) the indigent mother and child are denied the right to appointed counsel to represent them in these revocation proceedings, (2) trial by jury in these proceedings is denied, and (3) each statutory ground in G.S. 7A-289.32 for terminating parental rights is overly broad and vague.

After taking the matter under advisement, Judge Williford again heard it in open court on 7 October 1980. He concluded as a matter of law that the motion to dismiss should be granted because, alternatively, the Act unconstitutionally (I) deprives the indigent parent and child the right of counsel, (II) denies trial by jury in these proceedings, and (III) each of the statutory grounds for revocation of parental rights is unconstitutionally vague and

overbroad. Judge Williford then ordered that the proceeding be dismissed on the basis of each of his alternative conclusions of law.

We now consider the three constitutional issues raised by the order dismissing the proceeding.

I.

[1] The first assignment of error is that the trial court erred in concluding as a matter of law that the Act unconstitutionally deprives the parent and the child the right to counsel in that it makes no provision for appointment and payment of counsel "in such a case as is now before the court." We interpret the quoted language to refer to a case where the indigent respondent-mother is either a minor or not *sui juris* or both and where, as here, the minor child is obviously indigent. We believe the trial court erred in dismissing the action on that basis.

We acknowledge that after this case was filed and argued before this Court our legislature adopted Chapter 966 of the Session Laws of 1981. This act amends G.S. 7A-289.23, 7A-289.27, 7A-289.30 and 7A-451(a) to provide *inter alia* that in such cases a parent has a right to counsel and to appointed counsel in case of indigency unless the parent waives the right. The amendment further requires that a guardian ad litem be appointed to represent a parent where that parent suffers a diminished mental capacity as defined by G.S. 7A-289.32(7) or is a minor. The amendment also provides that fees of appointed counsel shall be borne by the Administrative Office of the Courts. Clearly the mother here would have been entitled to appointed counsel under the terms of this recent amendment had the provisions of the amendment been effective when the petition before us was filed.[1] Since this amendment was not then effective we must determine whether the indigent[2] respondent-mother was entitled to appointed counsel in the absence of such a statutory provision.

---

1. Chapter 966 was ratified by the General Assembly on 10 July 1981 and becomes effective according to its terms thirty days after ratification and only applies to cases brought on or after the effective date.

2. The record before us does not establish to a certainty that the minor respondent-mother has been determined to be indigent although it appears certain that the minor child is such. The conclusions of the trial court seem to find that the constitutional defect existed because of a lack of provision of counsel for both

---

In re Clark

---

We recognize that G.S. 7A-289.29(b) requires that a guardian ad litem *who is an attorney* be appointed for the child *only* if an answer is filed denying the material allegations of the petition. This language does not prevent the application of other pertinent statutory provisions. Whether or not the Act requires it, appointment of a guardian ad litem for both the minor respondent-mother and her minor child is mandated by G.S. 1A-1, Rule 17(c), Rules of Civil Procedure.[3]

"The appointment of the guardian *ad litem* is to protect the interest of the infant defendant at every stage of the proceeding." 7 Strong's N.C. Index 3d, Infants § 9, p. 202. "The guardian ad litem may prepare the answer himself or employ an attorney to represent the infant . . . . " McIntosh, N.C. Practice and Procedure, (Wilson & Wilson Ed.) § 693(d) (1956), *citing* former G.S. 1-67 (now found in parts of G.S. 7A-305 and G.S. 7A-306), and *Hood v. Cheshire*, 211 N.C. 103, 189 S.E. 189 (1937).

Thus, under the statutory law and traditional practice of this State, the minor parties to a civil action or a special proceeding must be represented by a guardian ad litem who may defend *pro se* or employ counsel. A traditional practice has been to appoint licensed attorneys as guardians ad litem, and, even then, in the more complicated matters, for the guardian to employ separate counsel.

Even though the respondent-mother was over fourteen years of age,[4] she was an infant and alleged to be not *sui juris*. In his *ex*

---

parent and child. The conclusion of law found specific defect in the absence of provision for appointment and payment of counsel. Since the only right to appointed counsel ever found to have existed under the Constitution of the United States was on the basis of indigency and the Act cannot be interpreted to prohibit representation by counsel, we treat this case based on the principles enumerated in indigency cases.

3. The conclusion that G.S. 1A-1, Rule 17(c)(2), Rules of Civil Procedure, applies is inescapable. All remedies in the courts of this State divide into (1) actions or (2) special proceedings. G.S. 1-1. A proceeding to terminate parental rights is clearly not a criminal action, thus it is either a civil action or a special proceeding, G.S. 1-2, G.S. 1-3, G.S. 1-4. If this is a civil action, the Rules apply, G.S. 1A-1, Rule 2; if this is a special proceeding, the Rules apply, G.S. 1-393, except where a different procedure may be prescribed by statute.

4. The Act provides for the appointment of guardians ad litem for minor parents under 14 (G.S. 7A-289.23) (now 18 by virtue of Chapter 966, Session Laws 1981), for parents alleged to be subject to termination under G.S. 7A-289.32(7)

*parte* order, Judge Long, finding as facts that she was an infant, not *sui juris* and had no general or testamentary guardian, appointed as guardian ad litem for her an attorney at law licensed and admitted to practice in the courts of North Carolina. Her guardian ad litem filed answer in apt time and vigorously represented her as attorney as well as guardian ad litem in all phases of the proceeding and in filing a brief and engaging in oral argument before this Court.

By order dated and filed 16 April 1980, Judge Williford appointed a guardian ad litem for the child (Kim Clark) who is likewise an attorney at law licensed and admitted to practice in the courts of North Carolina. He also filed answer and vigorously represented the child as attorney as well as guardian ad litem in all phases of the proceeding and in filing a brief and engaging in oral argument before this Court.

Thus, in the case before us both the indigent respondent-mother and her minor child were in fact represented by competent and conscientious counsel and therefore were in no way deprived of the right to counsel. Where, as here, the guardians ad litem are licensed attorneys and actively defend their client's interests, the resulting procedure is fundamentally fair and in accord with both the State and Federal Constitutions.

We do not consider respondent's further contention that the Act is unconstitutional because it fails to affirmatively provide for the appointment of counsel in *all* cases of indigency, because having both received representation of counsel, neither the respondent-mother nor the minor have standing to complain of possible procedural defects which might occur in other cases not now before the Court. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973); *State v. Fredell,* 283 N.C. 242, 195 S.E. 2d 300 (1973); 3 Strong's N.C. Index 3d, Constitutional Law § 4.2.

[2] The amendment to G.S. 7A-289.23 made by Chapter 966 of the 1981 Session Laws requires the appointment of counsel for

which was enacted subsequent to the filing of this proceeding (*see* footnote 1) involving dependency due to mental illness, mental retardation or degenerative mental condition, and for minor children when an answer is filed controverting a material allegation of the petition, G.S. 7A-289.29(a). The provision for appointment of guardians ad litem in these particular situations does not exclude their appointment in other situations.

any indigent parent in all cases brought on or after its effective date of 9 August 1981. There remains, however, the question of whether in proceedings brought prior to 9 August 1981 an indigent parent who is an adult and *sui juris* is entitled to the appointment of counsel as a matter of law.

The United States Supreme Court has very recently addressed this question in *Lassiter v. Department of Social Services of Durham County*, 49 U.S.L.W. 4586, No. 79-6423 decided 1 June 1981,[5] and held that the United States Constitution does not require the appointment of counsel for indigent parents in every parental status termination proceeding.[6] The Court noted however that a parent's interest in the accuracy and justice of the decision to terminate parental status is an extremely important one and that, while the State shares those same interests, it has a relatively weak pecuniary interest in avoiding the expense of appointed counsel. These factors, in connection with others which might be present in a given case, could require the appointment of counsel to satisfy due process.

Though not controlling, a decision by the Supreme Court of the United States construing the due process clause of the fourteenth amendment to the Federal Constitution is persuasive in our interpretation of the law of the land clause of our State Constitution. *Horton v. Gulledge*, 277 N.C. 353, 359, 177 S.E. 2d 885, 889 (1970); 3 Strong's N.C. Index 3d, Constitutional Law § 23. We find that the failure of our Act (prior to the recent amendment) to require the appointment of counsel for an indigent parent or the minor child in all cases did not make the Act constitutionally defective under the Constitution of North Carolina.

As to the right of the minor child to counsel in the absence of a guardian ad litem who is an attorney, we find the same rules applicable on a case by case basis. However, whenever the

---

5. In our courts *sub nom In the Matter of Lassiter*, 43 N.C. App. 525, 259 S.E. 2d 336 (1979), *pet. for disc. rev. denied* 299 N.C. 120, 262 S.E. 2d 6 (1980).

6. The Court stated however that wise public policy may require that higher standards be adopted than those minimally tolerable under the Constitution and noted that as of that time some thirty-three states and the District of Columbia provided statutorily for appointment in termination cases, No. 79-6463 decided 1 June 1981 at p. 15. *See also*, Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights, 80 A.L.R. 3d 1141 (1977).

respondent-parent is represented by counsel, appointed or retained, we believe that fundamental fairness requires that the minor child be represented by counsel.

While not necessary for a decision in this case, but in the interest of judicial economy, we state for the guidance of the judges of our trial and intermediate appellate court that we would follow *Lassiter* and hold that in proceedings brought prior to 9 August 1981, where other circumstances do not dictate to the contrary, an indigent parent is not entitled to appointment of counsel as a matter of law. In such proceedings begun prior to 9 August 1981, the right to appointed counsel must be determined on a case by case basis. While in the case before us the indigent parent was both a minor and not *sui juris*, we believe that either circumstance standing alone would be sufficient ground to require appointment of counsel. Such entitlement to counsel may ordinarily be satisfied by the appointment for said parent of a guardian ad litem who is a licensed attorney.

[3] The issue of compensation of appointed counsel was raised as a part of the constitutional deficiency found by the trial court. If counsel is the guardian ad litem the matter of attorney's fees would seem to be governed by G.S. 7A-305(d)(7) in the case of a civil action or G.S. 7A-306(c)(5) in the case of a special proceeding. Both statutes allow assessment of such fees as costs. *Hood v. Cheshire*, 211 N.C. 103, 189 S.E. 189 (1937) and other of our cases make it clear that fees of a separate attorney for a guardian ad litem are chargeable as an item of the costs of the guardian ad litem. The Act itself provides in G.S. 7A-289.31(d) that "[t]he court may tax the cost of the proceeding to any party." It seems therefore that in a proceeding under the Act, whatever its nature, the attorney's fee may be taxed as a part of the costs. One of the new amendments to the Act providing for payment of counsel by the Administrative Office of the Courts (AOC), though not applicable to the case before us, evidences a legislative intent that counsel fees in these cases should be borne by the AOC rather than by the departments of social services of the various counties. We deem it appropriate, and so hold, that attorney's fees allowed by the court for attorneys appointed in such proceedings (whether as separate counsel or as guardian ad litem) brought before the effective date of Chapter 966 of the Session Laws of 1981 shall also be borne by the AOC.

As to the first assignment of error, we hold that the trial court erred in dismissing the proceeding on the ground that subsection (4) of G.S. 7A-289.32 unconstitutionally deprived the respondent-parent and the minor child of the right to counsel.

Because the other assignments of error would be applicable to further proceedings in this matter, we will also address them in this opinion.

II.

[4] The second assignment of error is that the trial court erred in dismissing the proceeding on the ground that the Act is unconstitutional for the reason that *all* of the grounds for termination of parental rights set forth in the Act are vague and overbroad.

G.S. 7A-289.32 provides six separate grounds upon which parental rights can be terminated.[7] The finding of any one of the six grounds is sufficient to order termination. Subsection (4) of G.S. 7A-289.32 provides as follows:

(4) The child has been placed in the custody of a county department of social services, a licensed child-placing agency, or a child-caring institution, and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.

The petition filed by the Hertford County Department of Social Services, insofar as it relates to the respondent-mother, alleges only one ground (G.S. 7A-289.32(4)):

11. The child has been placed in the custody of the Hertford County Department of Social Services and the mother, for a continuous period of six months next preceding the filing of this petition, has failed to pay a reasonable portion of the cost of care for the child.

The record clearly indicates that the only ground for termination of parental rights to be applied to the respondent-mother in this action is her failure as a parent to provide a reasonable portion of

7. The original subdivision (1) relating to failure to establish or maintain concern or responsibility for the child was repealed by Session Laws 1979, C. 669 § 2 and the subdivisions were renumbered. A new subsection (7) relating to inability to support the child by reason of mental incapacity was added by Session Laws 1979, C. 1206 § 2.

the support of the child for six continuous months immediately preceding the filing of the petition. Therefore, subsection (4) of G.S. 7A-289.32 is the only section of the statute properly before this Court for review. The constitutionality of subsections (2), (3), (6) and (7) was not before the trial court and will not be considered on this appeal. *In re Appeal of Martin,* 286 N.C. 66, 209 S.E. 2d 766 (1974); *State v. Fredell,* 283 N.C. 242, 195 S.E. 2d 300 (1973); 3 Strong's N.C. Index 3d, Constitutional Law § 4.2.

We examine first the allegation of vagueness. This Court stated the test for fatal vagueness in *In re Burrus,* 275 N.C. 517, 169 S.E. 2d 879 (1969), *aff'd.* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed. 2d 647 (1971) as follows:

'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' . . . . Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. (Citations omitted.)

275 N.C. at 531, 169 S.E. 2d at 888.

The test is whether the language conveys a substantially definite warning of the proscribed conduct when measured by common understanding and practices.

It cannot be said that men of common understanding and intelligence must guess at the meaning of the terms of the statutory subsections in question or differ as to its application. The terms are brief and plain in their meaning: first, the child must have been placed in the custody of one of three types of institutions: (a) a county department of social services, (b) a licensed child-placing agency, or (c) a child-caring institution; and secondly, the parent has failed to pay a reasonable portion of the cost of the child for a continuous period of six months next preceding the filing of the petition. Since there can be no serious question as to the identification of the three types of institutions listed, the time element involved or the cost of providing foster care for the child, we will address the only other term used: "reasonable portion."

Our Court of Appeals in an excellent opinion by Vaughn, J., has recently plowed this ground to a substantial depth for us in *In re Biggers*, 50 N.C. App. 332, 274 S.E. 2d 236 (1981). We deem it unnecessary to restate that examination of applicable law here. A parent's ability to pay is the controlling characteristic of what is a "reasonable portion" of cost of foster care for the child which the parent must pay. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. What is within a parent's "ability" to pay or what is within the "means" of a parent to pay is a difficult standard which requires great flexibility in its application. G.S. 7A-289.32(4) requires a parent to pay a *reasonable* portion of the child's foster care costs. The requirement applies irrespective of the parent's wealth or poverty. In the case before us the indigent respondent-mother was at the time of the hearing both an infant fifteen years old and alleged to be not *sui juris*. As this matter was determined in the trial court on a motion to dismiss before any hearing on the merits of the proceeding was had, no evidence of the respondent-mother's ability to pay was before the court. At a hearing on the merits, evidence may be offered by the respondent-mother or by the State as to her ability or means to pay any portion of the costs of the child's care or whether she is eligible for or has made any attempt to obtain public assistance for such purpose. The burden of DSS on the merits of the petition is a heavy one. The statute requires that all findings of fact be based on clear, cogent and convincing evidence. G.S. 7A-289.30(e).

Challenges to termination of parental rights statutes on the ground of vagueness are not uncommon. Our Court of Appeals has recently addressed such a challenge.

> We note that vagueness challenges to similar statutes have been increasingly made across the nation, but they have been almost uniformly rejected. *See* Comment, Application of the Vagueness Doctrine to Statutes Terminating Parental Rights, 1980 Duke L.J. 336, 341; Day, Termination of Parental Rights Statutes and the Void for Vagueness Doctrine: A Successful Attack on the *Parens Patriae* Rationale, 16 J. Fam. L. 213, 232 (1977-78); 70 Colum. L. Rev. 465, 469 (1970). *But see Davis v. Smith*, 266 Ark. 112, 583 S.W. 2d 37 (1979); *Roe v. Conn.*, 417 F. Supp. 769 (M.D. Ala. 1976); *Alsager v. District*

*Court,* 406 F. Supp. 10 (S.D. Iowa 1975), *aff'd,* 545 F. 2d 1137 (8th Cir. 1976). An 'impossible standard of statutory clarity' would be inappropriate in cases involving child care and custody. 'What might be unconstitutional if only the parents' rights were involved is constitutional if the statute adopts legitimate and necessary means to protect the child's interests.' *State v. McMaster,* 259 Or. 291, 296, 486 P. 2d 567, 569 (1971) (rejecting a vagueness claim to the Oregon statute for termination of parental rights). *Accord, In re Daniel H.,* 591 P. 2d 1175 (Okla. 1979). This context requires flexibility in the weighing of each case's facts in order to give the child, as well as the parent, the highest form of due process.

. . . .

. . . [W]e hold that the provisions of G.S. 7A-289.32 . . . (4) are sufficiently definite to be applied in a uniform manner to protect both the State's substantial interest in the welfare of minor children and the parents' fundamental right to the integrity of their family unit.

*In re Biggers, Two Minor Children,* 50 N.C. App. at 341-43, 274 S.E. 2d at 242.

We concur in the foregoing language of Vaughn, J., in *Biggers.* We find no constitutional defect for vaugeness in G.S. 7A-289.32(4).

Nor do we find the terms employed in subsection (4) to be "overbroad." A statute is not overbroad when it punishes, prohibits, or inhibits only conduct which is *not* constitutionally protected. Overbreadth is an issue only where some constitutionally protected conduct is punished, prohibited or inhibited by the very same statutory provision which punishes, prohibits or inhibits the unprotected behaviour. *See In re Harris,* 37 N.C. App. 590, 246 S.E. 2d 532 (1978). We find no constitutionally protected conduct here with regard to the respondent-mother's obligation to pay some portion of the foster care cost for her child. Could it reasonably be argued that failure for a continuous period of six months to pay a reasonable portion of the cost of care for one's child which has been placed in the custody of the department of social services for foster care is a constitutionally protected right? Obviously not.

In re Clark

We hold that the phrase "reasonable portion of the cost of care for the child" as used in the context of the Act is, by all normal standards, understandable by people of common intelligence without any necessity of guessing as to its meaning or differing as to its application. The phrase contains words of such common usage and understanding as to give parents notice of their responsibilities and of the type of conduct which is condemned, to-wit, failure to provide a reasonable portion of the cost of caring for the child. This phrase also provides boundaries sufficiently distinct that judges may interpret and administer it uniformly. While meeting these standards, it remains sufficiently flexible for application to the great variety of circumstances which will be presented to our courts tomorrow and tomorrow. As to the second assignment of error, we hold that the trial court erred in dismissing the proceeding on the ground that subsection (4) of G.S. 7A-289.32 is unconstitutionally vague and overbroad.

### III.

[5] The third assignment of error is that the trial court erred in dismissing the proceeding on the ground that the petition fails to state a claim upon which relief may be granted because the Act is unconstitutional in that it deprives the respondent-mother and the minor child of trial by jury in the proceeding for termination of parental rights.

G.S. 7A-289.30(a) provides that the district court shall hear the case without a jury. Such a provision was within the prerogative of the legislature. *Board of Education v. Forest*, 193 N.C. 519, 137 S.E. 431 (1927). The respondents argue that this statutory provision denies them equal protection under the laws.

The right of trial by jury only "as declared by the Constitution or statutes of North Carolina" is preserved inviolate by Rule 38 of the North Carolina Rules of Civil Procedure. Since the statute directs that the proceeding be heard without a jury, the respondents are not entitled to trial by jury unless such right exists by virtue of our state constitution.[8] It is well settled that

8. The seventh amendment of the United States Constitution, guaranteeing jury trials in federal courts, is not applicable to state courts. *St. Louis & San Fran. R.R. v. Brown*, 241 U.S. 223, 36 S.Ct. 602, 60 L.Ed. 966 (1916); *Caudle v. Swanson*, 248 N.C. 249, 103 S.E. 2d 357 (1958).

under section 19 Article I of the North Carolina Constitution trial by jury is guaranteed only where the prerogative existed at common law or by statute at the time the Constitution was adopted. *In re Wallace*, 267 N.C. 204, 147 S.E. 2d 922 (1966). Proceedings to terminate parental rights in children were unknown at common law and they did not exist by statute until the adoption of the Act in 1969. *See In the Matter of Mary Lou Ferguson*, 50 N.C. App. 681, 274 S.E. 2d 879 (1981). There exists no constitutional right to trial by jury in proceedings to terminate parental rights. As to the third assignment of error, we hold that the trial judge erred in concluding that the Act is unconstitutional because it deprives the parties of trial by jury.

## IV.

The fourth and last assignment of error is that "The trial court erred in dismissing the proceeding because that order is without foundation in law or in fact." We agree. Having found in the Act none of the constitutional defects stated by Judge Williford as the basis for his order, we conclude that there was no foundation in law or in fact for dismissing the proceeding. The trial judge erred in concluding as a matter of law that Article 24B of Chapter 7A of the General Statutes contravenes the Constitutions of the United States and the State of North Carolina and in dismissing the proceeding for failure to state a claim upon which relief could be granted.

Judge Williford's order of 7 October 1980 dismissing the proceeding is vacated and the cause remanded to the District Court, Hertford County for proceedings consistent with this opinion.

Reversed and remanded.