IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-102

No. 339A20

Filed 27 August 2021

IN THE MATTER OF: Z.G.J.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 30 April 2020 by Judge Christine Underwood in District Court, Iredell County. This matter was calendared in the Supreme Court on 9 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Lauren Vaughan for petitioner-appellee Iredell County Department of Social Services.*

*Stephen M. Schoeberle for appellee Guardian ad Litem.*

*Jeffrey L. Miller for respondent-appellant mother.*

HUDSON, Justice.

Respondent appeals from the trial court's orders terminating her parental rights to her minor child Z.G.J. (Ann).[1] She raises four main arguments on appeal: (1) that the social worker who signed the termination of parental rights petition lacked standing to file the petition; (2) that the trial court improperly relied only on the termination petition when assessing whether grounds existed to terminate

[1] A pseudonym chosen by the parties is used to protect the identity of the minor child and for ease of reading.

respondent's rights; (3) that the trial court's findings of fact do not support its determination that respondent's parental rights were subject to termination based on neglect, willfully leaving Ann in foster care or a placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that led to her removal, willfully failing to pay a reasonable portion of Ann's cost of care for the six months preceding the filing of the petition, and dependency; and (4) that respondent received ineffective assistance from her trial counsel. After review, we conclude the trial court's findings of fact do not support its conclusion that grounds for termination existed, and we reverse the termination orders.

## I.  Background

Petitioner Iredell County Department of Social Services (DSS) became involved with Ann's family beginning in August 2016 after DSS received a Child Protective Services (CPS) report alleging that Ann's parents were using a variety of drugs in front of Ann, engaging in domestic violence, and failing to supervise Ann, who was not yet two years old. DSS began providing services to the family but only received minimal cooperation with these services.

In the ensuing months, DSS received three more CPS reports which included more allegations of substance abuse and domestic violence by Ann's parents. The last of these reports was received on 14 February 2017 and reflected that respondent had

overdosed and was found lying on the ground next to a vehicle where Ann was strapped into her car seat inside. Witnesses reported that both of Ann's parents had been shooting up heroin in the back of the vehicle. Both parents were charged with misdemeanor child abuse. The next day, DSS filed a petition alleging that Ann was an abused and neglected juvenile and obtained nonsecure custody.

¶ 4 On 21 March 2017, the parties entered into consent adjudication and disposition orders. Ann was adjudicated to be abused and neglected. In order to remedy the issues which led to Ann's removal, respondent was ordered to enter into and comply with a case plan, to cooperate with DSS and the guardian ad litem, to submit to substance abuse and domestic violence evaluations and comply with any resulting recommendations, to submit to random drug screens, to not use any illegal drugs and only use prescription medications in the manner prescribed, to not engage in domestic violence, and to not engage in criminal activity. Respondent was granted supervised visitation for two hours per week, with the opportunity for additional supervised visitation in the community if she submitted three consecutive negative drug screens.

¶ 5 The first permanency planning hearing was held on 12 September 2017. In the order that resulted, the trial court found that respondent was currently in jail awaiting trial on new criminal charges involving drug use and theft and that she had not made any progress on her case plan. The court established a primary permanent

plan of guardianship, with a secondary plan of custody with a relative.

¶ 6 The next permanency planning hearing occurred on 5 December 2017. The parties agreed to a consent order which included findings that respondent had been released from jail and had begun to "lay some groundwork" for her case plan. The primary permanent plan was changed to reunification with a secondary plan of adoption.

¶ 7 The permanent plans remained unchanged through the 1 May 2018 permanency planning hearing. However, in its order from that hearing, the trial court found that respondent had tested positive for opiates and that she was not making adequate progress on her case plan within a reasonable period of time.

¶ 8 On 21 August 2018, DSS filed a petition to terminate respondent's parental rights on the grounds of neglect, willfully leaving Ann in foster care or a placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that led to her removal, willfully failing to pay a reasonable portion of Ann's cost of care for the six months preceding the filing of the petition, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). DSS social worker Toia Johnson verified the petition.

¶ 9 The trial court conducted a termination hearing on 24 September 2019. During the adjudication phase, Johnson was the only witness, and she testified that she would adopt the allegations in the termination petition as her testimony. There were

no objections to entering the petition into the record, and respondent's counsel declined to cross-examine Johnson. At the conclusion of the adjudicatory phase, the trial court rendered its decision that grounds existed to terminate respondent's parental rights. The case then proceeded to the dispositional phase.

¶ 10 Respondent did not arrive until midway through the disposition hearing. She was permitted to testify and recounted some of her progress, including her plan to enter into an in-patient substance abuse treatment program. On cross-examination, respondent admitted that she was addicted to heroin and that she had failed to satisfy many of the conditions of her case plan. After hearing the evidence and the arguments of counsel, the trial court rendered its determination that termination of respondent's parental rights was in Ann's best interest.

¶ 11 On 30 April 2020, the trial court entered two written orders terminating respondent's parental rights to Ann.[2] In its adjudication order, the court concluded that all four grounds for termination alleged by DSS existed, and in its disposition order, the court concluded that termination was in Ann's best interests. Respondent appeals.

## II. Standing

¶ 12 Respondent's first argument is that the trial court lacked subject matter

[2] The trial court's orders also terminated the parental rights of Ann's father, but he did not appeal the orders and is therefore not a party to this appeal.

jurisdiction to terminate her parental rights because the termination petition was not filed by a party with standing. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *In re A.S.M.R.*, 375 N.C. 539, 542 (2020) (cleaned up).

> The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent. A court's lack of subject matter jurisdiction is not waivable and can be raised at any time, including for the first time upon appeal. We review questions of law de novo.

*In re N.P.*, 376 N.C. 729, 2021-NCSC-11, ¶ 5 (cleaned up). "This Court presumes the trial court has properly exercised jurisdiction unless the party challenging jurisdiction meets its burden of showing otherwise." *In re L.T.*, 374 N.C. 567, 569 (2020).

¶ 13        To have standing to file a termination of parental rights case, a petitioner or movant must fall within one of the seven categories set out in N.C.G.S. § 7B-1103 (2019). Further, N.C.G.S. § 7B-1104 requires the petition or motion initiating a termination action to include "facts sufficient to identify the petitioner or movant as one authorized by G.S. 7B-1103 to file a petition or motion." N.C.G.S. § 7B-1104(2) (2019).

¶ 14        Section 7B-1103(a)(3) authorizes a termination petition to be filed by "[a]ny county department of social services, consolidated county human services agency, or licensed child-placing agency to whom custody of the juvenile has been given by a

court of competent jurisdiction." The termination petition in this case alleged standing based on this provision:

> The petitioner is Toia Johnson, a social worker employed by the Iredell County Department of Social Services, whose address is Post Office Box 1146 / 549 Eastside Drive, Statesville, North Carolina 28687[.] The petitioner qualifies to bring this Petition to Terminate Parental Rights under N.C. Gen. Stat. §7B-1103(a)(3), as the Iredell County Department of Social Services has been given custody of the above-referenced juvenile by a court of competent jurisdiction, as set forth in the order attached hereto as "Exhibit #1" and incorporated herein by reference.

Johnson also executed a sworn verification of the petition, in which she identified herself as "Social Worker Iredell County Dept. of Social Services."

¶ 15    Respondent does not dispute that DSS had been given custody of Ann by a court of competent jurisdiction at the time the termination petition was filed. Instead, she argues that since "Ms. Johnson stated under oath that she was the petitioner in this matter[,]" the petition must have been filed in Johnson's individual capacity. As an individual, Johnson did not satisfy any of the categories in N.C.G.S. § 7B-1103(a) that provide standing to file a termination petition. Respondent contends the termination orders should therefore be vacated.

¶ 16    Respondent provides an untenable interpretation of Johnson's verified allegation describing the basis of her standing to file the termination petition. Her interpretation necessarily ignores the portions of the allegation where Johnson

explicitly identified herself as "a social worker employed by the Iredell County Department of Social Services," where Johnson listed her address as that of DSS, and where Johnson alleged she had standing to file the petition under N.C.G.S. § 7B-1103(a)(3), which applies only to certain organizations such as departments of social services. Considering this additional context, the logical conclusion is that Johnson filed the termination petition in her capacity as a representative of DSS. Since it is clear from the record that the termination petition was filed by DSS, an organization with standing under N.C.G.S. § 7B-1103(a)(3), respondent cannot meet her burden of showing that the trial court lacked subject matter jurisdiction to consider and rule upon the petition to terminate her parental rights.

### III.    Evidence Supporting Grounds for Termination

¶ 17        Respondent next raises a series of arguments regarding the evidence supporting the trial court's adjudication of grounds for termination. She contends that Johnson's oral adoption of the allegations from the termination petition resulted in the trial court improperly relying on the petition itself as the only adjudication evidence. Respondent further argues that the trial court's findings, to the extent they were supported by competent evidence, failed to support the existence of any of the four grounds for termination.

**A. Adjudication Evidence Presented by DSS**

¶ 18        As part of any termination of parental rights proceeding, the trial court must

adjudicate the existence of any of the grounds for termination alleged in the petition. At the adjudication hearing, the trial court must "take evidence [and] find the facts" necessary to support its determination of whether the alleged grounds for termination exist. N.C.G.S. § 7B-1109(e) (2019). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6 (2019).

¶ 19 The adjudication hearing in this case was brief. Johnson was called to the stand, and the DSS attorney began his direct examination:

> Q. Ms. Johnson, would you please state your name for the Court?
>
> A. Toia Johnson, former foster care social worker.
>
> Q. And were you in fact the social worker for [Ann]?
>
> A. Yes, I was.
>
> Q. And up to the filing of the petition, were you the social worker for [Ann]?
>
> A. Yes, I was.
>
> Q. And did you in fact sign a verification for the petition that was filed in this matter?
>
> A. Yes, I did.
>
> Q. And being that you've already signed a verification, have you in fact reviewed the contents of the juvenile petition to terminate parental rights–

A. Yes, I have.

Q. – for this child? And after reviewing the contents, are you satisfied that the contents are true and accurate to the best of your knowledge?

A. Yes, they are.

Q. Would you adopt those contents as your testimony for today?

A. Yes, I would.

The DSS attorney then offered the petition into the record, and it was admitted without objection. The attorney next had Johnson verify the information in Ann's birth certificate before ending his questioning. Neither the trial court nor the other parties asked Johnson any further questions.

¶ 20        Respondent contends that DSS's proffer of evidence amounted to submitting the allegations from its verified petition as its only adjudication evidence. She notes that the Court of Appeals has repeatedly reversed juvenile orders that were based solely on documentary evidence and argues we should reach the same result here. *See, e.g., Thrift v. Buncombe County DSS*, 137 N.C. App. 559, 562–64 (2000) (reversing a neglect adjudication that was based only on the verified allegations in the juvenile petition); *In re A.M.*, 192 N.C. App. 538, 542 (2008) (reversing a termination of parental rights order that was based "solely on the written reports of DSS and the guardian ad litem, prior court orders, and oral arguments by the attorneys involved in the case"); *In re N.G.*, 195 N.C. App. 113, 118 (2009) (reversing

a termination order where DSS offered only a court report as evidence and "presented no oral testimony to carry its burden of proof").

¶ 21 Respondent's argument ignores the salient difference between the above Court of Appeals' cases and this case: here, DSS offered live witness testimony. The lack of oral testimony was a determinative factor in the prior Court of Appeals' holdings cited by respondent. As the court explained in *In re A.M.*:

> In the case *sub judice*, the trial court entered an order based solely on the written reports of DSS and the guardian *ad litem*, prior court orders, and oral arguments by the attorneys involved in the case. DSS did not present any witnesses for testimony, and the trial court did not examine any witnesses. We conclude, therefore, that the trial court failed to hold a proper, independent termination hearing. Consideration of written reports, prior court orders, and the attorney's oral arguments was proper; however, in addition the trial court needed some oral testimony. *See* [N.C.G.S.] § 1A-1, Rule 43(a). However, this opinion should not be construed as requiring extensive oral testimony. We note that the trial courts may continue to rely upon properly admitted reports or other documentary evidence and prior orders, as long as a witness or witnesses are sworn or affirmed and tendered to give testimony.

*In re A.M.*, 192 N.C. App. at 542.

¶ 22 In this case, DSS called Johnson as a witness and tendered her to give testimony. While Johnson's testimony was not extensive, she orally reaffirmed, under oath, all of the allegations from the termination petition. Respondent was given the opportunity to cross-examine Johnson with respect to any of these allegations, and she declined to do so. In light of Johnson's testimony, the trial court conducted a

proper adjudication hearing in accordance with N.C.G.S. § 7B-1109(e), and it did not err by relying on Johnson's testimony adopting the allegations in the termination petition when it entered its adjudication order.

**B. Grounds for Termination**

¶ 23 Respondent also contends that the trial court's findings of fact did not support its conclusions of law that four grounds for termination existed. Ultimately, we conclude that errors related to each of the four grounds require reversal.

¶ 24 When reviewing the trial court's adjudication of grounds for termination, we examine whether the court's findings of fact "are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). Any unchallenged findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

### 1. Neglect

¶ 25 The first ground for termination found by the trial court was neglect under N.C.G.S. § 7B-1111(a)(1). This subsection allows for parental rights to be terminated if the trial court finds that the parent has neglected their child to such an extent that the child fits the statutory definition of a "neglected juvenile." N.C.G.S. § 7B-1111(a)(1) (2019). A neglected juvenile is defined, in relevant part, as a juvenile

"whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C.G.S. § 7B-101(15) (2019).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of future neglect by the parent. When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.

*In re R.L.D.*, 375 N.C. 838, 841 (2020) (cleaned up).

¶ 26    In its termination order, the trial court concluded that the neglect ground existed because there was a likelihood of future neglect if Ann were returned to respondent's care. It is well established that when deciding whether future neglect is likely, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*." *In re Ballard*, 311 N.C. 708, 715 (1984).

¶ 27    However, the only evidence offered by DSS at adjudication was Johnson's testimony adopting the termination petition, which was filed on 21 August 2018. The termination hearing did not occur until more than thirteen months later, on 24 September 2019. Thus, the allegations in the petition do not shed any light on respondent's fitness to care for Ann at the time of the termination hearing, and the

trial court erred by relying on the stale information in the petition as its only support for this ground.[3] *See Ballard*, 311 N.C. at 715.

¶ 28        Both DSS and the guardian ad litem attempt to supplement the evidence presented during the adjudication hearing with respondent's testimony during the disposition hearing in order to salvage the trial court's adjudication of this ground. We reject this attempt, as we have previously held that dispositional evidence cannot be used to support the trial court's adjudicatory determinations. *See In re Z.J.W.*, 376 N.C. 760, 2021-NCSC-13, ¶ 17 ("In the event that the trial court relied upon this dispositional evidence as support for its adjudicatory finding[,] . . . we agree with longstanding Court of Appeals precedent that it was error to do so."). Respondent's testimony in this case occurred after the trial court had already rendered its adjudicatory decision and moved to the dispositional phase of the hearing, and as a result, the testimony could not provide competent evidence to support the already-rendered adjudication.

¶ 29        Since there was no competent evidence from which the trial court could determine respondent's fitness to care for Ann at the time of the adjudication hearing,

_____

[3] Respondent notes that, even though no evidence was admitted regarding circumstances after August 2018, many of the trial court's findings could be interpreted to "suggest events or facts occurring or existing after August 2018 . . . or at the time of the termination hearing[.]" We agree that all such findings are erroneous, and thus we disregard any finding that implicates post-petition evidence or events, as there is no competent evidence to support such findings. *See In re J.M.J.-J.*, 374 N.C. 553, 559 (2020) (disregarding adjudicatory findings of fact not supported by clear, cogent, and convincing evidence).

the court's conclusion that "the probability of repetition of neglect is high should the minor child be returned to the care of" respondent is unsupported. Accordingly, the trial court's adjudication of the neglect ground must be reversed.

## 2. *Willful Failure to Make Reasonable Progress*

¶ 30        The trial court also found respondent's rights were subject to termination under N.C.G.S. § 7B-1111(a)(2), which permits the court to terminate parental rights if the parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2019).

> Termination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re Z.A.M.*, 374 N.C. 88, 95 (2020). A parent's reasonable progress "is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." *In re J.S.*, 374 N.C. 811, 815 (2020). Thus, this ground must fail for the same reason as the trial court's adjudication of the neglect ground. The most recent evidence of respondent's progress was more than thirteen months before the termination hearing. There was no competent evidence regarding respondent's

progress for the period leading up to the termination hearing.[4] Accordingly, we reverse this ground for termination as well.

### 3. Dependency

As a third ground for termination, the trial court found that respondent's parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(6). That subsection permits a parent's rights to be terminated upon a showing that (1) "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and . . . there is a reasonable probability that such incapability will continue for the foreseeable future[,]" and (2) "the parent lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-1111(a)(6) (2019). Like the adjudication of grounds pursuant to subsections (a)(1) and (2), an adjudication of dependency as a ground for termination under subsection (a)(6) must be based on an examination of the parent's ability to care for and supervise their child at the time of the adjudication hearing. *See In re C.L.H.*, 376 N.C. 614, 2021-NCSC-1, ¶ 12 (reversing an adjudication under N.C.G.S. § 7B-1111(a)(6) because "the trial court made no finding of fact, and there was no evidence presented, that at the time of the termination hearing respondent

---

[4] As with neglect, the GAL cites a portion of respondent's dispositional testimony as support for this ground. We reiterate that dispositional evidence cannot be used to support the adjudication of termination grounds. *See In re Z.J.W.*, 376 N.C. 760, 2021-NCSC-13, ¶ 17.

suffered from any condition which rendered him incapable of providing proper care or supervision" to his child). As with the prior two grounds for termination, the only competent evidence presented to support the dependency ground was from at least thirteen months prior to the hearing, and thus, there was no evidence presented as to respondent's condition at the time of the termination hearing. Consequently, the trial court erred by adjudicating this ground for termination, and the trial court's adjudication of dependency is also reversed.

### 4. *Willful Failure to Pay a Reasonable Portion of Ann's Cost of Care*

¶ 32    Finally, the trial court found that respondent's parental rights were subject to termination under subsection (a)(3), which provides:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3) (2019). In this case, the termination petition was filed on 21 August 2018, and the relevant period for this ground was therefore 21 February through 21 August 2018.

¶ 33    The trial court made the following finding with respect to this ground:

> Respondent Mother has been employed at times during this case and always remained able bodied however she has paid zero dollars of child support for [Ann] since she came

> into care. Zero dollars is not a reasonable amount of child support based on Respondent Mother's actual income nor her ability to earn. Respondent Mother has willfully failed to pay a reasonable cost of care for the juvenile.

This finding is not adequately tailored to the relevant six-month period. In *In re K.H.*, we determined a similar finding failed to support an (a)(3) adjudication:

> In the TPR order, the trial court made factual findings that respondent "worked at Shoe Show as well as Cook Out in 2018 and has not paid any monies towards the cost of care for the juvenile"; that "at various points in time, [respondent] was employed, although that employment was part-time"; that "[respondent] is physically and financially able to pay a reasonable portion of the child's care, and thus has the ability to pay an amount greater than zero"; that "[respondent] has [not] made a significant contribution towards the cost of care"; and that "[t]he total cost of care for [Kaitlyn] through June 2018 is $14,170.35."

> However, none of these findings—nor any others related to this ground for termination—address the specific, relevant six-month time period from 8 February 2018 to 8 August 2018. Therefore, we conclude that the trial court's findings of fact are insufficient to support its conclusion of law that there were grounds to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(3), which specifically requires that "the parent has for *a continuous period of six months immediately preceding the filing of the petition or motion* willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3) (emphasis added). Accordingly, we reverse the trial court on this issue.

*In re K.H.,* 375 N.C. at 616–17 (2020). Similarly, the trial court's finding in this case references respondent's sporadic employment "at times during this case," and this

reference covers a period of more than eighteen months, from 15 February 2017, when the initial juvenile petition was filed, until 21 August 2018, when the termination petition was filed. The trial court's finding does not specifically address the six-month period prior to the filing of the termination petition and therefore fails to demonstrate that respondent "has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3). Accordingly, this ground for termination is unsupported and must be reversed.[5]

## IV.  Conclusion

¶ 34      The termination of parental rights petition was filed by DSS through its representative, Johnson, and DSS had standing to file a petition under N.C.G.S. § 7B-1103(a)(3). The trial court did not err in relying upon the allegations in the

---

[5] The dissent argues "the facts in *In re K.H.* are distinct from this case" and would distinguish the present case on the ground that "this case does not involve a minor parent." We need not delve into the "nuances in *In re K.H.*," namely that "the factual findings that the respondent was a minor and had lived with her child in the same foster care placement, both as minors," to conclude those facts were irrelevant to our holding. The trial court's findings were insufficient to support the conclusions of law because they failed to "address the specific, relevant six-month time period" required by G.S. § 7B-1111(a)(3), *In re K.H.*, 375 N.C. at 616. The respondent's status as a minor had no bearing upon the Court's decision to reverse, *see id.* at 616–17, and was, therefore, *obiter dicta. See Hayes v. City of Wilmington*, 243 N.C. 525, 537 (1956) ("Official character attaches only to those utterances of a court which bear directly upon the specific and limited questions which are presented to it for solution in the proper course of judicial proceedings. Over and above what is needed for the solution of these questions, its deliverances are unofficial." (cleaned up)).

termination petition when making its findings of fact, as the petition was introduced through the testimony of Johnson and was subject to cross-examination. However, by relying solely on the evidence from a termination petition that was filed thirteen months prior to the hearing, the trial court erred by concluding grounds for termination existed under subsections (a)(1), (2), and (6), since each of those grounds requires evaluating the evidence as of the time of the termination hearing. Moreover, the trial court's finding of fact with respect to subsection (a)(3) was insufficient to show that respondent willfully failed to pay an adequate portion of Ann's cost of care for a continuous period of six months immediately preceding the filing of the termination petition. In light of the foregoing, the orders terminating respondent's parental rights must be reversed.[6] Since we are reversing the termination orders, we need not address respondent's final argument, that she received ineffective assistance from her trial counsel.

REVERSED.

---

[6] Although respondent did not specifically challenge the trial court's disposition order, that order necessarily must be reversed since the adjudication order has been reversed. *See* N.C.G.S. § 7B-1110(a) ("*After an adjudication that one or more grounds for terminating a parent's rights exist*, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." (emphasis added)).

Justice BARRINGER concurring in part, dissenting in part.

While I concur with the majority's holdings that the termination-of-parental-rights petition was filed by the Iredell County Department of Social Services (DSS) through its representative, that DSS had standing to file a petition under N.C.G.S. § 7B-1103(a)(3), and that the trial court did not err in relying upon the allegations in the termination petition when making its findings of fact, I would affirm the trial court's order terminating respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(3). Respondent's ineffective of assistance counsel claim is without merit, and the findings of facts support the trial court's conclusion of law concerning termination under N.C.G.S. § 7B-1111(a)(3). Therefore, I respectfully concur in part and dissent in part.

## I.    Background

DSS received reports that respondent, after shooting up heroin in the back of a vehicle, had overdosed and was found lying on the ground next to a vehicle where the juvenile, Ann, was strapped into her car seat inside. After receiving this report, DSS filed a petition alleging that Ann was an abused and neglected juvenile and obtained nonsecure custody. On 21 March 2017, respondent consented to the adjudication and dispositional order that adjudicated Ann to be an abused and neglected juvenile.

Over a year later, on 21 August 2018, DSS filed a verified petition to terminate

respondent's parental rights. DSS alleged as grounds for termination N.C.G.S. § 7B-1111(a)(1)–(3) and (6). On 10 October 2018, respondent was personally served with the summons and the petition to terminate respondent's parental rights. Respondent never filed an answer or other responsive pleading.

At the termination hearing, Toia Johnson, a former foster care social worker for DSS, testified that she was the social worker for Ann up until the filing of the termination petition, that she had verified the termination petition, that she had reviewed the contents of the termination petition, that the contents of the termination petition were true and accurate to the best of her knowledge, and that she adopted the allegations in the termination petition as her testimony. Then, counsel for DSS introduced and moved to admit the termination petition into evidence. Counsel for respondent informed the trial court that she had no objection to the admission of the termination petition into evidence. No other party objected to the admission, and the trial court admitted the termination petition into evidence. DSS informed the trial court that this concluded its evidence for adjudication. After hearing from the respondent parents' trial counsel that as to the adjudication phase they were not tendering evidence or argument, the trial court found "by clear, cogent, and convincing evidence that grounds exist[ed] to terminate the parental rights of the [r]espondent [p]arents, specifically as alleged in the petition to terminate parental rights."

¶ 39    The trial court then ordered that the matter proceed to disposition. At the disposition stage of the termination hearing, the trial court heard the evidence, including respondent's testimony in which she admitted that she was addicted to heroin, that she had failed to satisfy many of the conditions of her case plan, and that she was and had been continuously employed except for the brief time she spent in the county jail before making bond. Then, the trial court heard the arguments of counsel, including from respondent's trial counsel. Upon the conclusion of counsels' arguments, the trial court orally made findings of fact to be supplemented by a written order, concluded that termination was in the best interest of Ann, and terminated the rights of respondent to Ann.[1]

¶ 40    The trial court then signed written orders consistent with its oral holdings addressing adjudication and disposition. Respondent appealed.

## II.    Ineffective Assistance of Counsel

¶ 41    Respondent contends that she was denied the effective assistance of counsel because her trial counsel "failed to object to the introduction of the [termination] petition as evidence [at] the termination[-]of[-]parental[-]rights [hearing]."

> Parents have a right to counsel in all proceedings dedicated to the termination of parental rights. Counsel necessarily must provide effective assistance, as the alternative would render any statutory right to counsel potentially meaningless. To prevail on a claim of ineffective assistance

---

[1] The trial court's orders also terminated the parental rights of Ann's father, but he did not appeal the orders and is therefore not a party to this appeal.

of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive him of a fair hearing. To make the latter showing, the respondent must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.

*In re G.G.M.*, 377 N.C. 29, 2021-NCSC-25, ¶ 35 (cleaned up).

¶ 42        Respondent alleges that the termination petition was inadmissible because a party may not introduce and have admitted into evidence its own pleading. Respondent also claims prejudice, asserting that the termination petition was the only evidence supporting the trial court's adjudication.

¶ 43        Respondent's argument of ineffective assistance of counsel fails to show that "there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *In re G.G.M.*, ¶ 35. Here, Johnson, who verified the termination petition, testified. She testified that the contents of the termination petition were true and accurate to the best of her knowledge and adopted the allegations in the termination petition as her testimony. Johnson's testimony provides the same support for the trial court's adjudication as the admission of the termination petition, and respondent has not argued or shown Johnson's testimony to be improper. Therefore, respondent has failed to carry her burden to show that she received ineffective assistance of counsel.

### III. Grounds for Termination

¶ 44        Respondent presents arguments for each of the grounds found by the trial court as a basis for termination of respondent's parental rights to Ann. However, as competent evidence supports the findings of fact, and the findings of fact support the trial court's conclusion of law for termination of respondent's parental rights to Ann pursuant to N.C.G.S. § 7B-1111(a)(3), I would affirm the termination-of-parental-rights order on this ground. To terminate parental rights, a finding of only one ground is necessary. N.C.G.S. § 7B-1111(a) (2019); *see also In re A.R.A.*, 373 N.C. 190, 194 (2019). Thus, respondent's remaining arguments concerning the other grounds need not be addressed.

¶ 45        When reviewing a trial court's adjudication under N.C.G.S. § 7B-1111, this Court "determine[s] whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)).

¶ 46        Subsection 7B-1111(a)(3) of the General Statutes of North Carolina provides that a trial court may terminate the parental rights upon concluding that

> [t]he juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3). "[I]rrespective of the parent's wealth or poverty," a parent is required "to pay a reasonable portion of the child's foster care costs." *In re Clark*, 303 N.C. 592, 604 (1981). "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *Id.*

¶ 47 Respondent first challenges finding of fact 24 as "insufficient on its face," stating that the last sentence is a conclusion of law, the term "child support" rather than "foster care" is used, and there is no mention of the six-month period preceding the filing of the termination-of-parental-rights petition. Second, respondent alleges that there is no evidence of a child support order, respondent's actual income, the dates of respondent's employment, or her place of employment or earnings during the six-month period preceding the filing of the termination-of-parental-rights petition.

¶ 48 Respondent's challenges are misplaced. This Court reviews findings of fact to determine whether they are supported by clear, cogent, and convincing evidence, and if they are, the findings of fact of the trial court are deemed conclusive. *In re J.A.M.*, 370 N.C. 464, 466–67 (2018) (per curiam) (reversing the Court of Appeals decision for

misapplying the standard of review for challenged findings of fact). Appellate courts "are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. at 110–11.

¶ 49    Respondent's arguments do not dispute the sufficiency of the evidence for what the trial court found as facts. In paragraph 24 of the order on adjudication of the termination-of-parental-rights hearing, the trial court found by clear, cogent, and convincing evidence the following:

> Respondent [m]other has been employed at times during this case and always remained able bodied however she has paid zero dollars of child support for [Ann] since she came into care. Zero dollars is not a reasonable amount of child support based upon [r]espondent [m]other's actual income [ ]or her ability to earn. Respondent [m]other has willfully failed to pay a reasonable cost of care for the juvenile.

¶ 50    Respondent correctly observes that the trial court used the term "child support" but does not dispute the evidentiary basis for the finding that respondent paid "zero dollars of child support." Respondent also correctly observes that the findings of fact do not refer to the relevant six-month period applicable to N.C.G.S. § 7B-1111(a)(3) but does not dispute the evidentiary basis for the finding that respondent "has paid zero dollars of child support for [Ann] since she came into care."

¶ 51    Additionally, respondent complains that there is no evidence of a court order requiring child support payments or a child support order and no evidence of

respondent's numerical amount of income, place of employment, or dates of employment, during the relevant six-month period or otherwise. However, because the trial court did not find there was a court order or child support order or the specific figures, places of employment, or dates of respondent's employment, these are not challenges of the trial court's findings of fact and the evidentiary support for them.

¶ 52 Contrary to respondent's argument, it is also well established that "[t]he determination that respondent acted 'willfully' is a finding of fact rather than a conclusion of law." *In re J.S.*, 374 N.C. 811, 818 (2020) (citing *Pratt v. Bishop*, 257 N.C. 486, 501 (1962)). Thus, the last sentence of the trial court's finding of fact, finding willfulness, is reviewed as a finding of fact for the sufficiency of the evidence. *See id.* (applying the appropriate standard of review to a finding of willfulness even when mislabeled as a conclusion of law).

¶ 53 However, even if properly challenged, Johnson's testimony adopting the allegations in the petition supports the findings of fact made by the trial court in paragraph 24. Johnson's testimony, as also set forth in the verified petition concerning N.C.G.S. § 7B-1111(a)(3), was as follows:

> [t]he above-named juvenile has been placed in the custody of the Iredell County Department of Social Services and in a foster home, and the [r]espondent [m]other, for a continuous period of six months next preceding the filing of the petition, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

    i.    [The respondent parents had funds available to them to pay for services and treatments through respondent mother's reported employment and respondent father's disability benefits.]

    ii.    [Ann] has been placed in the custody of the Iredell County Department of Social Services and in a foster home since February 15, 2017.

    iii.    The total estimated cost of care for [Ann] from February 15, 2017 through July 31, 2018 is $24,933.84.

    iv.    The [r]espondent [m]other has paid $0.00 in support for the benefit of [Ann].

    v.    The [r]espondent [m]other is able-bodied and has reported being employed or searching for employment throughout the pendency of the underlying action.

Respondent's contention instead is best understood as arguing that for the reasons argued in her brief and previously summarized, the findings of fact are not sufficient to support the conclusion of law.

> This Court reviews de novo the issue of whether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a). Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court.

*In re T.M.L.*, 377 N.C. 369, 2021-NCSC-55, ¶ 15 (cleaned up).

This Court has already held that "[t]he absence of a court order, notice, or knowledge of a requirement to pay support is not a defense to a parent's obligation to

pay reasonable costs, because parents have an inherent duty to support their children." *In re S.E.*, 373 N.C. 360, 366 (2020). Thus, the absence of a finding regarding a court order or child support order does not defeat a conclusion of law pursuant to N.C.G.S. § 7B-1111(a)(3).

¶ 56        Further, the use of the term "child support" is not confusing or inappropriate in the context presented in this termination-of-parental-rights order. While the trial court could have used the term "cost of foster care," we understand what the trial court found when it used the term "child support" in its finding of fact. *See generally* N.C.G.S. § 7B-1111(a)(3) (establishing that "willfully fail[ing] to pay a reasonable portion of the cost of care for the juvenile" is a ground for terminating parental rights).

¶ 57        Finally, as the majority cites, this Court in one case, *In re K.H.*, 375 N.C. 610 (2020) concluded that "the findings of fact [were] insufficient to support [the trial court's] conclusion of law that there were grounds to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(3)" because "none of these findings . . . address the specific, relevant six-month time period from 8 February 2018 to 8 August 2018." *Id.* at 617. However, the facts in *In re K.H.* are distinct from this case. This Court summarized the facts in *In re K.H.* as follows:

> In 2017 a sixteen-year-old mother and her nine-month-old baby were taken into custody by the Cabarrus County Department of Social Services (DSS) and placed in the same foster home. After six months together, the child was moved to a different foster home apart from her mother. Less than eight months later, DSS filed a motion

to terminate respondent-mother's parental rights to her child.

*Id.* at 611.

¶ 58　　One of the grounds for termination was N.C.G.S. § 7B-1111(a)(3). *Id.* at 612. In that matter, "the relevant six-month period of time during which the trial court [had to] determine whether respondent was able to pay a reasonable portion of the cost of [the child's] care but failed to do so was from 8 February 2018 to 8 August 2018." *Id.* at 616. The trial court had found that

> respondent worked at Shoe Show as well as Cook Out in 2018 and has not paid any monies towards the cost of care for the juvenile; that at various points in time, respondent was employed, although that employment was part-time; that respondent is physically and financially able to pay a reasonable portion of the child's care, and thus has the ability to pay an amount greater than zero; that respondent has not made a significant contribution towards the cost of care; and that the total cost of care for [the juvenile] through June 2018 is $14,170.35.

*Id.* at 616–17 (cleaned up).

¶ 59　　The trial court in *K.H.* had also found that the respondent was a minor when the juvenile proceeding was initiated, that the respondent lived with her child in the same foster care placement, both as minors for a period in 2017 and in 2018, and that respondent turned eighteen years old only weeks before the termination hearing.

¶ 60　　In contrast, as reflected in the trial court's findings of facts, this case does not involve a minor parent. Thus, the nuances of *In re K.H.*—the factual findings that the

respondent was a minor and had lived with her child in the same foster care placement, both as minors—are not before this Court. While the majority dismisses these factual findings as not determinative to this Court's holding in *In re K.H.*, construing the decision to *not* turn on these factual findings leads to an absurd result: findings by a trial court that a respondent, despite having the ability to pay cost of care, "has not paid any monies towards the cost of care for the juvenile" fails to satisfy N.C.G.S. § 7B-1111(a)(3). Inherently, a finding that a respondent has never paid monies for the cost of care would encompasses "[the] period of six months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(3). Thus, the findings of fact do "address the specific, relevant six-month time period from 8 February 2018 to 8 August 2018." *In re K.H.*, 375 N.C. at 617.

In this matter, the finding of fact that respondent had "always remained able bodied however she has paid zero dollars of child support for [Ann] since she came into care" covers the relevant six-month period. The trial court further found that the amount of zero was "not a reasonable amount of child support based upon [r]espondent-[m]other's actual income [ ]or her ability to earn" and that she "willfully failed to pay." While the trial court does not precisely name the relevant six-month period, nothing in N.C.G.S. § 7B-1111(a)(3) requires an express reference where the plain language and context of the trial court's findings of fact address and encompass the relevant six-month period. This Court has recognized this principle in *In re*

*L.M.T.*, 367 N.C. 165 (2013) and *In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26. A trial court's findings of fact need to "address the necessary statutory factors" but need not use "the precise statutory language." *In re H.A.J.*, ¶ 16 (addressing sufficiency of findings to satisfy N.C.G.S. § 7B-906.2(d)); *see also In re L.M.T.*, 367 N.C. at 168 (addressing sufficiency of findings to satisfy former N.C.G.S. § 7B-507(b)(1) (2011)); *cf. In re K.R.C.*, 374 N.C. 849, 861 n.7 (2020) ("Because the order *sub judice* lacks any ultimate findings addressing the gravamen of N.C.G.S. § 7B-1111(a), we need not consider the degree to which our holding in *In re L.M.T.* applies to an adjudicatory order entered pursuant to N.C.G.S. §§ 7B-1109(e) and -1110(c).").

¶ 62        Thus, exercising judgment anew, the binding findings of fact support the trial court's conclusion of law pursuant to N.C.G.S. § 7B-1111(a)(3). As respondent has not challenged the best interest determination, the termination of respondent's parental rights to Ann should be affirmed on the ground of N.C.G.S. § 7B-1111(a)(3).

## IV.    Conclusion

¶ 63        For the foregoing reasons, the decision of the trial court should be upheld on the ground for termination of N.C.G.S. § 7B-1111(a)(3). Accordingly, I respectfully dissent.

Chief Justice NEWBY and Justice BERGER join in this concurring in part and dissenting in part opinion.