IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-137

No. 82A21

Filed 5 November 2021

IN THE MATTER OF: J.K.F., H.N.F., N.L.F.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 28 October 2020 by Judge David V. Byrd in District Court, Yadkin County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*James N. Freeman Jr. for petitioner-appellee Yadkin County Human Services Agency.*

*Paul W. Freeman Jr. for appellee Guardian ad Litem.*

*Mercedes O. Chut for respondent-appellant mother.*

EARLS, Justice.

Respondent-mother appeals from the trial court's order terminating her parental rights in the minor children, "Jack,"[1] "Hannah," and "Nicole." We affirm the trial court's order and hold that the trial court had sufficient evidence to support the conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(3) to terminate respondent-mother's parental rights for her failure to pay a reasonable portion of the

[1] We use pseudonyms to protect the juveniles' identities and for ease of reading.

cost of care for the children.

## I. Factual and Procedural Background

On 13 September 2019, the Yadkin County Human Services Agency (YCHSA) moved to terminate respondent-mother's parental rights in the minor children, Jack, Hannah, and Nicole. Although he is discussed in this opinion, the children's father died in an automobile accident in May 2019 and is not a party to this appeal. On 28 August 2020, the trial court held a hearing on YCHSA's motion to terminate respondent-mother's parental rights. The trial court entered its order terminating respondent-mother's parental rights on 28 October 2020. Respondent filed timely notice of appeal from the termination order on 25 November 2020.

In June 2018, YCHSA first investigated respondent-mother and the father based on a report that they had engaged in domestic violence at home while the children were present. In the course of its investigation, YCHSA observed that the father and respondent-mother were struggling financially and lacked electricity in their home. YCHSA recommended services for the family including mental health treatment and parenting education, but the parents declined to participate at that time.

YCHSA encountered the family again in August 2018 when they received a report that Hannah had been inappropriately touched by her grandfather. While these allegations ultimately were unsubstantiated, in the course of investigating

them, YCHSA observed that the home still lacked electricity, and the father and respondent-mother were having difficulty meeting their children's basic needs. Shortly thereafter, the family relocated to Forsyth County. There, the father and respondent-mother attempted to enroll Jack in elementary school but could not provide the school with a permanent address, which caused Jack to miss several weeks of school.

¶ 5      The father contacted YCHSA on 22 October 2018, stating that he could not properly care for the children, that respondent-mother refused to bathe the children, and that she would not take care of them. The father brought a YCHSA employee to the camper trailer located on his brother's property where the family was living. There, the YCHSA employee observed the following: the trailer had multiple broken windows covered with wood; the three children shared a single twin mattress; the toilet appeared to be clogged with feces and toilet paper; the trailer was heated by a small space heater which was insufficient to maintain heat in the structure; nails were protruding from the trailer door, creating a hazard to the children; and the only food in the trailer was a box of macaroni and cheese and an open bottle of soda. The three children were dressed in t-shirts and shorts though the temperature was in the fifties.

¶ 6      The father advised YCHSA that he wanted treatment for his mental health and anger issues. Respondent-mother also acknowledged having untreated mental

health issues. The father consented to YCHSA placing the children in foster care in order to meet their needs.

¶ 7    On 23 October 2018, YCHSA filed juvenile petitions alleging that Jack, Hannah, and Nicole were neglected juveniles, as they did not receive proper care, supervision, or discipline from their parents, and they lived in an injurious home environment. *See* N.C.G.S. § 7B-101(15) (2019). The trial court placed the children in nonsecure custody pending its ruling on the petitions.

¶ 8    Respondent-mother signed an Out of Home Family Services Agreement (case plan) with YCHSA on 11 December 2018, which required her to complete a psychological assessment and a substance abuse assessment and comply with any recommendations; submit to random drug screens as requested; complete a parenting education program; obtain and maintain housing suitable for the children for at least six months; and obtain and maintain consistent employment for at least six months.

¶ 9    After a hearing on 3 January 2019, the trial court entered an order on 6 February 2019 adjudicating the children to be neglected juveniles. On 29 April 2019, respondent-mother signed a voluntary support agreement. Pursuant to the agreement, she was ordered to pay $35.66 per child in monthly child support.

¶ 10    Based on respondent-mother's additional positive drug screens and lack of progress on her case plan, the trial court concluded in an order entered on 6 August 2019 that additional "[r]eunification efforts would clearly be unsuccessful or

inconsistent with the [children's] health and safety." The court established a primary permanent plan of adoption with a secondary plan of reunification and ordered the director of YCHSA to initiate a termination-of-parental-rights proceeding.

¶ 11        On 13 September 2019, YCHSA moved to terminate respondent-mother's parental rights in Jack, Hannah, and Nicole. As grounds for termination, the motion alleged that respondent-mother neglected the children under N.C.G.S. § 7B-1111(a)(1); that she had willfully left the children in an out-of-home placement for more than twelve months without making reasonable progress to correct the conditions leading to removal under N.C.G.S. § 7B-1111(a)(2); and that she had willfully failed to pay a reasonable portion of the children's cost of care in YCHSA custody for the six months immediately preceding the filing of the motion under N.C.G.S. § 7B-1111(a)(3). Respondent-mother responded denying the motion's material allegations.

¶ 12        On 28 August 2020, the trial court held a hearing on YCHSA's motion to terminate respondent-mother's parental rights. At the time of the hearing, respondent-mother was homeless, unemployed, and receiving no treatment for her mental health or substance abuse issues. She had not completed the required parenting education program and had last visited the children in October 2019.

¶ 13        The trial court entered its order terminating respondent-mother's parental rights on 28 October 2020. The court concluded YCHSA had proved the existence of

each of the asserted statutory grounds for termination by clear, cogent, and convincing evidence. After considering the dispositional factors in N.C.G.S. § 7B-1110(a), the court further concluded that terminating respondent-mother's parental rights was in each of the children's best interests. Respondent-mother filed timely notice of appeal from the termination order.

## II.     Issues on Appeal

¶ 14        On appeal, respondent-mother argues that the trial court erred by finding that grounds existed to terminate respondent-mother's rights to her children pursuant to N.C.G.S. § 7B-1111(a)(1)–(3). The trial court found that three grounds existed to terminate respondent-mother's rights: neglect under N.C.G.S. § 7B-1111(a)(1), failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2), and willful failure to pay cost of care under N.C.G.S. § 7B-1111(a)(3). As the law allows us to decide on one ground, we affirm the lower court's decision on the third ground. *See* N.C.G.S. § 7B-1111(a) (2019) ("The court may terminate the parental rights upon a finding of one or more of the following [grounds for termination.]").

## A. Standard of Review

¶ 15        "Proceedings to terminate parental rights consist of an adjudicatory stage and a dispositional stage." *In re K.H.*, 375 N.C. 610, 612 (2020). At the adjudicatory stage, "the petitioner bears the burden of proving by clear, cogent, and convincing evidence that grounds exist for termination pursuant to" the statute. *In re E.H.P.*, 372 N.C.

388, 391 (2019). "The trial court's conclusions of law are reviewable de novo on appeal." *In re K.H.*, 375 N.C. at 612. Respondent-mother does not allege any error at the dispositional stage. Therefore, this opinion focuses on the findings of the trial court at the adjudicatory stage.

**B. Analysis**

Granting the motion to terminate respondent-mother's parental rights, the trial court found that grounds existed under N.C.G.S. § 7B-1111(a)(3), which reads as follows:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3).

Since the motion for termination of parental rights was filed on 13 September 2019, the trial court needed to make specific findings about the relevant six-month statutory period which was from 13 March 2019 to 13 September 2019. *See In re K.H.*, 375 N.C. at 616 (analyzing the trial court's findings for evidence of willful nonpayment during the exact six-month period).

For the purposes of N.C.G.S. § 7B-1111(a)(3), "[a] parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based

upon the parent's ability or means to pay." *In re J.M.*, 373 N.C. 352, 357 (2020) (quoting *In re Clark*, 303 N.C. 592, 604 (1981)). The existence of a valid child support order or voluntary support agreement is evidence of the parent's ability to pay the amount prescribed therein. *In re A.P.W.*, 2021-NCSC-93, ¶ 44 (quoting *In re J.M.*, 373 N.C. at 359).

¶ 19 Respondent-mother argues that petitioner did not meet its burden to prove that she had the ability to pay child support during that period, and therefore, the nonpayment was not shown to be willful. She claims that her dates of incarceration and dates of working for her aunt were not entered into the record and there was no finding of employment during that time.

¶ 20 Respondent-mother's argument is undermined by the undisputed facts that (1) she entered into a voluntary support agreement on 29 April 2019—during the six-month period at issue—which is evidence of her ability to pay a monthly sum, as defined in that agreement, of "$107.00 in ongoing support, with $30.00 towards the arrears, split amongst all three children[,]" and (2) she paid no child support during the relevant statutory period. *See In re A.P.W.*, 2021-NCSC-93, ¶ 44. As this Court explained in *In re A.P.W.*, where a parent is subject to a valid child support order or voluntary support agreement establishing her ability to pay a particular amount, it is not fatal to petitioner's case if the trial court fails to make "findings that address [her] income, employment, or capacity for the same during the six-month period

relevant to [N.C.G.S. §] 7B-1111(a)(3)." *Id.* ¶¶ 42, 44 (alterations in original). Moreover, respondent-mother adduced no evidence that she was incarcerated between 13 March 2019 and 13 September 2019. The record shows that, in addition to attending the 14 March 2019 dispositional hearing, she attended the 27 June 2019 permanency-planning hearing and submitted to drug screens requested by YCHSA on 4 April 2019 and 2 May 2019.

In fact, the evidence further shows that respondent-mother worked during at least part of the six-month period. The trial court substantiated that conclusion with the following findings of fact and conclusion of law:

> 18.    . . . [Respondent-mother] indicated she was working in early to mid-March 2019 with a relative. She indicated that work was available to her with an Aunt as well. She further indicated via her testimony that she lacked the motivation to get out and work because she didn't have her kids and that if she did she would have [gone] to work. She never made a single voluntary payment towards the support of her children. The only form of payment received was a $642.00 intercept [on 21 July 2020, outside of the six-month range] that was split amongst the children. Her current arrears in support are $534.90 as to [Jack], $535.05 as to [Hannah] and $715.05 as to [Nicole].
>
> . . . .
>
> 20.    The Court finds that [respondent-mother] has for a continuous period of more than 6 months immediately preceding the filing of this Motion for Termination of Parental Rights, failed to pay a reasonable portion of each child's cost of care despite having been physically and financially capable of doing so.

. . . .

> 3.    [YCHSA] has shown by clear, cogent, and convincing evidence that the following grounds exist to terminate the [respondent-mother's] parental rights to the minor children:
>
> . . . .
>
> > c.    N.C.G.S. [§] 7B-1111(a)(3) in that the minor children are placed in the custody of [YCHSA] and [respondent-mother] has for a continuous period of 6 months immediately preceding the filing of the Motion to Terminate Parental Rights willfully failed to pay a reasonable portion of the cost of care for the minor children although she is physically and financially able to do so.

To the extent respondent-mother does not challenge the trial court's findings of fact, they are binding.

¶ 22    Respondent-mother claims that "no evidence" supports the trial court's statement in finding of fact 18 that she "indicated she was working in early to mid-March 2019 with a relative." However, the Guardian ad Litem's report dated 20 June 2019 and received into evidence at the 27 June 2019 ninety-day review hearing,[2]

---

[2] The trial court took "judicial notice of all orders, court reports, attachments to court reports, and other documents contained in the underlying juvenile files . . . and in so doing consider[ed] the burden of proof under which such documents were accepted into evidence at the time." *See generally In re T.N.H.*, 372 N.C. 403, 410 (2019) ("A trial court may take judicial notice of findings of fact made in prior orders, even when those findings are based on a lower evidentiary standard because where a judge sits without a jury, the trial court is presumed to have disregarded any incompetent evidence and relied upon the competent evidence.").

which was during the statutory period, includes a statement that respondent-mother indicated "she is working part-time in a thrift store owned by her aunt" but is not paying child support. Respondent-mother testified about working for her aunt during the termination hearing, where she stated:

> I had worked with my aunt off and on [in] the past -- actually, I've worked with her numerous times since I've been out of jail with her lawn care service and her thrift shop, but it's nothing major. I was only getting paid, like, maybe $200.00 to $300.00 a week, if that.

Thus, the corresponding portions of finding of fact 18 are supported by the evidence, and we accept that respondent-mother worked during the relevant period.

¶ 23        Finally, respondent-mother observes that "no finding relevant to [N.C.G.S. § 7B-1111(a)(3)] includes the language that [she] *willfully* failed to pay support or a reasonable portion of the cost of care." Although the term "willfully" does not appear in the findings pertinent to this adjudication, the trial court's conclusion of law 3(c) expressly states that respondent-mother "has for a continuous period of 6 months immediately preceding the filing of the Motion to Terminate Parental Rights willfully failed to pay a reasonable portion of the cost of care for the minor children although she is physically and financially able to do so."

¶ 24        The location of the trial court's finding of willfulness has no bearing on its efficacy. *In re J.S.*, 374 N.C. 811, 818 (2020). In light of the evidence that respondent-mother signed a voluntary support agreement which she never moved to modify or

set aside, that she had some gainful employment during the relevant period, and that she subsequently did not make reasonable payments toward the children's cost of care during the relevant six-month period, we conclude "the trial court did not err in finding respondent-mother's nonpayment to be willful and in concluding that grounds existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(3)." *In re A.P.W.*, 2021-NCSC-93, ¶ 45.

### III.    Conclusion

Because we uphold the trial court's adjudication under N.C.G.S. § 7B-1111(a)(3), we need not review the two remaining grounds found by the court under N.C.G.S. § 7B-1111(a)(1)–(2). Respondent-mother offers no argument regarding the trial court's assessment of the children's best interests at the dispositional stage of the proceeding under N.C.G.S. § 7B-1110(a). The order terminating respondent-mother's parental rights in Jack, Hannah, and Nicole is therefore affirmed.

AFFIRMED.