IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-137

 No. 82A21

 Filed 5 November 2021

 IN THE MATTER OF: J.K.F., H.N.F., N.L.F.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 28

 October 2020 by Judge David V. Byrd in District Court, Yadkin County. This matter

 was calendared for argument in the Supreme Court on 30 September 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 James N. Freeman Jr. for petitioner-appellee Yadkin County Human Services
 Agency.

 Paul W. Freeman Jr. for appellee Guardian ad Litem.

 Mercedes O. Chut for respondent-appellant mother.

 EARLS, Justice.

¶1 Respondent-mother appeals from the trial court’s order terminating her

 parental rights in the minor children, “Jack,”1 “Hannah,” and “Nicole.” We affirm the

 trial court’s order and hold that the trial court had sufficient evidence to support the

 conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(3) to terminate

 respondent-mother’s parental rights for her failure to pay a reasonable portion of the

 1 We use pseudonyms to protect the juveniles’ identities and for ease of reading.
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 cost of care for the children.

 I. Factual and Procedural Background

¶2 On 13 September 2019, the Yadkin County Human Services Agency (YCHSA)

 moved to terminate respondent-mother’s parental rights in the minor children, Jack,

 Hannah, and Nicole. Although he is discussed in this opinion, the children’s father

 died in an automobile accident in May 2019 and is not a party to this appeal. On 28

 August 2020, the trial court held a hearing on YCHSA’s motion to terminate

 respondent-mother’s parental rights. The trial court entered its order terminating

 respondent-mother’s parental rights on 28 October 2020. Respondent filed timely

 notice of appeal from the termination order on 25 November 2020.

¶3 In June 2018, YCHSA first investigated respondent-mother and the father

 based on a report that they had engaged in domestic violence at home while the

 children were present. In the course of its investigation, YCHSA observed that the

 father and respondent-mother were struggling financially and lacked electricity in

 their home. YCHSA recommended services for the family including mental health

 treatment and parenting education, but the parents declined to participate at that

 time.

¶4 YCHSA encountered the family again in August 2018 when they received a

 report that Hannah had been inappropriately touched by her grandfather. While

 these allegations ultimately were unsubstantiated, in the course of investigating
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 them, YCHSA observed that the home still lacked electricity, and the father and

 respondent-mother were having difficulty meeting their children’s basic needs.

 Shortly thereafter, the family relocated to Forsyth County. There, the father and

 respondent-mother attempted to enroll Jack in elementary school but could not

 provide the school with a permanent address, which caused Jack to miss several

 weeks of school.

¶5 The father contacted YCHSA on 22 October 2018, stating that he could not

 properly care for the children, that respondent-mother refused to bathe the children,

 and that she would not take care of them. The father brought a YCHSA employee to

 the camper trailer located on his brother’s property where the family was living.

 There, the YCHSA employee observed the following: the trailer had multiple broken

 windows covered with wood; the three children shared a single twin mattress; the

 toilet appeared to be clogged with feces and toilet paper; the trailer was heated by a

 small space heater which was insufficient to maintain heat in the structure; nails

 were protruding from the trailer door, creating a hazard to the children; and the only

 food in the trailer was a box of macaroni and cheese and an open bottle of soda. The

 three children were dressed in t-shirts and shorts though the temperature was in the

 fifties.

¶6 The father advised YCHSA that he wanted treatment for his mental health

 and anger issues. Respondent-mother also acknowledged having untreated mental
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 health issues. The father consented to YCHSA placing the children in foster care in

 order to meet their needs.

¶7 On 23 October 2018, YCHSA filed juvenile petitions alleging that Jack,

 Hannah, and Nicole were neglected juveniles, as they did not receive proper care,

 supervision, or discipline from their parents, and they lived in an injurious home

 environment. See N.C.G.S. § 7B-101(15) (2019). The trial court placed the children in

 nonsecure custody pending its ruling on the petitions.

¶8 Respondent-mother signed an Out of Home Family Services Agreement (case

 plan) with YCHSA on 11 December 2018, which required her to complete a

 psychological assessment and a substance abuse assessment and comply with any

 recommendations; submit to random drug screens as requested; complete a parenting

 education program; obtain and maintain housing suitable for the children for at least

 six months; and obtain and maintain consistent employment for at least six months.

¶9 After a hearing on 3 January 2019, the trial court entered an order on 6

 February 2019 adjudicating the children to be neglected juveniles. On 29 April 2019,

 respondent-mother signed a voluntary support agreement. Pursuant to the

 agreement, she was ordered to pay $35.66 per child in monthly child support.

¶ 10 Based on respondent-mother’s additional positive drug screens and lack of

 progress on her case plan, the trial court concluded in an order entered on 6 August

 2019 that additional “[r]eunification efforts would clearly be unsuccessful or
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 inconsistent with the [children’s] health and safety.” The court established a primary

 permanent plan of adoption with a secondary plan of reunification and ordered the

 director of YCHSA to initiate a termination-of-parental-rights proceeding.

¶ 11 On 13 September 2019, YCHSA moved to terminate respondent-mother’s

 parental rights in Jack, Hannah, and Nicole. As grounds for termination, the motion

 alleged that respondent-mother neglected the children under N.C.G.S. § 7B-

 1111(a)(1); that she had willfully left the children in an out-of-home placement for

 more than twelve months without making reasonable progress to correct the

 conditions leading to removal under N.C.G.S. § 7B-1111(a)(2); and that she had

 willfully failed to pay a reasonable portion of the children’s cost of care in YCHSA

 custody for the six months immediately preceding the filing of the motion under

 N.C.G.S. § 7B-1111(a)(3). Respondent-mother responded denying the motion’s

 material allegations.

¶ 12 On 28 August 2020, the trial court held a hearing on YCHSA’s motion to

 terminate respondent-mother’s parental rights. At the time of the hearing,

 respondent-mother was homeless, unemployed, and receiving no treatment for her

 mental health or substance abuse issues. She had not completed the required

 parenting education program and had last visited the children in October 2019.

¶ 13 The trial court entered its order terminating respondent-mother’s parental

 rights on 28 October 2020. The court concluded YCHSA had proved the existence of
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 each of the asserted statutory grounds for termination by clear, cogent, and

 convincing evidence. After considering the dispositional factors in N.C.G.S. § 7B-

 1110(a), the court further concluded that terminating respondent-mother’s parental

 rights was in each of the children’s best interests. Respondent-mother filed timely

 notice of appeal from the termination order.

 II. Issues on Appeal

¶ 14 On appeal, respondent-mother argues that the trial court erred by finding that

 grounds existed to terminate respondent-mother’s rights to her children pursuant to

 N.C.G.S. § 7B-1111(a)(1)–(3). The trial court found that three grounds existed to

 terminate respondent-mother’s rights: neglect under N.C.G.S. § 7B-1111(a)(1),

 failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2), and willful

 failure to pay cost of care under N.C.G.S. § 7B-1111(a)(3). As the law allows us to

 decide on one ground, we affirm the lower court’s decision on the third ground. See

 N.C.G.S. § 7B-1111(a) (2019) (“The court may terminate the parental rights upon a

 finding of one or more of the following [grounds for termination.]”).

 A. Standard of Review

¶ 15 “Proceedings to terminate parental rights consist of an adjudicatory stage and

 a dispositional stage.” In re K.H., 375 N.C. 610, 612 (2020). At the adjudicatory stage,

 “the petitioner bears the burden of proving by clear, cogent, and convincing evidence

 that grounds exist for termination pursuant to” the statute. In re E.H.P., 372 N.C.
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 388, 391 (2019). “The trial court’s conclusions of law are reviewable de novo on

 appeal.” In re K.H., 375 N.C. at 612. Respondent-mother does not allege any error at

 the dispositional stage. Therefore, this opinion focuses on the findings of the trial

 court at the adjudicatory stage.

 B. Analysis

¶ 16 Granting the motion to terminate respondent-mother’s parental rights, the

 trial court found that grounds existed under N.C.G.S. § 7B-1111(a)(3), which reads

 as follows:

 The juvenile has been placed in the custody of a county
 department of social services, a licensed child-placing
 agency, a child-caring institution, or a foster home, and the
 parent has for a continuous period of six months
 immediately preceding the filing of the petition or motion
 willfully failed to pay a reasonable portion of the cost of
 care for the juvenile although physically and financially
 able to do so.

 N.C.G.S. § 7B-1111(a)(3).

¶ 17 Since the motion for termination of parental rights was filed on 13 September

 2019, the trial court needed to make specific findings about the relevant six-month

 statutory period which was from 13 March 2019 to 13 September 2019. See In re K.H.,

 375 N.C. at 616 (analyzing the trial court’s findings for evidence of willful

 nonpayment during the exact six-month period).

¶ 18 For the purposes of N.C.G.S. § 7B-1111(a)(3), “[a] parent is required to pay that

 portion of the cost of foster care for the child that is fair, just and equitable based
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 upon the parent’s ability or means to pay.” In re J.M., 373 N.C. 352, 357 (2020)

 (quoting In re Clark, 303 N.C. 592, 604 (1981)). The existence of a valid child support

 order or voluntary support agreement is evidence of the parent’s ability to pay the

 amount prescribed therein. In re A.P.W., 2021-NCSC-93, ¶ 44 (quoting In re J.M.,

 373 N.C. at 359).

¶ 19 Respondent-mother argues that petitioner did not meet its burden to prove

 that she had the ability to pay child support during that period, and therefore, the

 nonpayment was not shown to be willful. She claims that her dates of incarceration

 and dates of working for her aunt were not entered into the record and there was no

 finding of employment during that time.

¶ 20 Respondent-mother’s argument is undermined by the undisputed facts that (1)

 she entered into a voluntary support agreement on 29 April 2019—during the six-

 month period at issue—which is evidence of her ability to pay a monthly sum, as

 defined in that agreement, of “$107.00 in ongoing support, with $30.00 towards the

 arrears, split amongst all three children[,]” and (2) she paid no child support during

 the relevant statutory period. See In re A.P.W., 2021-NCSC-93, ¶ 44. As this Court

 explained in In re A.P.W., where a parent is subject to a valid child support order or

 voluntary support agreement establishing her ability to pay a particular amount, it

 is not fatal to petitioner’s case if the trial court fails to make “findings that address

 [her] income, employment, or capacity for the same during the six-month period
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 relevant to [N.C.G.S. §] 7B-1111(a)(3).” Id. ¶¶ 42, 44 (alterations in original).

 Moreover, respondent-mother adduced no evidence that she was incarcerated

 between 13 March 2019 and 13 September 2019. The record shows that, in addition

 to attending the 14 March 2019 dispositional hearing, she attended the 27 June 2019

 permanency-planning hearing and submitted to drug screens requested by YCHSA

 on 4 April 2019 and 2 May 2019.

¶ 21 In fact, the evidence further shows that respondent-mother worked during at

 least part of the six-month period. The trial court substantiated that conclusion with

 the following findings of fact and conclusion of law:

 18. . . . [Respondent-mother] indicated she was
 working in early to mid-March 2019 with a relative. She
 indicated that work was available to her with an Aunt as
 well. She further indicated via her testimony that she
 lacked the motivation to get out and work because she
 didn’t have her kids and that if she did she would have
 [gone] to work. She never made a single voluntary payment
 towards the support of her children. The only form of
 payment received was a $642.00 intercept [on 21 July 2020,
 outside of the six-month range] that was split amongst the
 children. Her current arrears in support are $534.90 as to
 [Jack], $535.05 as to [Hannah] and $715.05 as to [Nicole].

 ....

 20. The Court finds that [respondent-mother] has
 for a continuous period of more than 6 months immediately
 preceding the filing of this Motion for Termination of
 Parental Rights, failed to pay a reasonable portion of each
 child’s cost of care despite having been physically and
 financially capable of doing so.
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 ....

 3. [YCHSA] has shown by clear, cogent, and
 convincing evidence that the following grounds exist to
 terminate the [respondent-mother’s] parental rights to the
 minor children:

 ....

 c. N.C.G.S. [§] 7B-1111(a)(3) in that the minor
 children are placed in the custody of [YCHSA]
 and [respondent-mother] has for a continuous
 period of 6 months immediately preceding the
 filing of the Motion to Terminate Parental
 Rights willfully failed to pay a reasonable
 portion of the cost of care for the minor
 children although she is physically and
 financially able to do so.

 To the extent respondent-mother does not challenge the trial court’s findings of fact,

 they are binding.

¶ 22 Respondent-mother claims that “no evidence” supports the trial court’s

 statement in finding of fact 18 that she “indicated she was working in early to mid-

 March 2019 with a relative.” However, the Guardian ad Litem’s report dated 20 June

 2019 and received into evidence at the 27 June 2019 ninety-day review hearing,2

 2 The trial court took “judicial notice of all orders, court reports, attachments to court

 reports, and other documents contained in the underlying juvenile files . . . and in so doing
 consider[ed] the burden of proof under which such documents were accepted into evidence at
 the time.” See generally In re T.N.H., 372 N.C. 403, 410 (2019) (“A trial court may take judicial
 notice of findings of fact made in prior orders, even when those findings are based on a lower
 evidentiary standard because where a judge sits without a jury, the trial court is presumed
 to have disregarded any incompetent evidence and relied upon the competent evidence.”).
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 which was during the statutory period, includes a statement that respondent-mother

 indicated “she is working part-time in a thrift store owned by her aunt” but is not

 paying child support. Respondent-mother testified about working for her aunt during

 the termination hearing, where she stated:

 I had worked with my aunt off and on [in] the past --
 actually, I’ve worked with her numerous times since I've
 been out of jail with her lawn care service and her thrift
 shop, but it’s nothing major. I was only getting paid, like,
 maybe $200.00 to $300.00 a week, if that.

 Thus, the corresponding portions of finding of fact 18 are supported by the evidence,

 and we accept that respondent-mother worked during the relevant period.

¶ 23 Finally, respondent-mother observes that “no finding relevant to [N.C.G.S. §

 7B-1111(a)(3)] includes the language that [she] willfully failed to pay support or a

 reasonable portion of the cost of care.” Although the term “willfully” does not appear

 in the findings pertinent to this adjudication, the trial court’s conclusion of law 3(c)

 expressly states that respondent-mother “has for a continuous period of 6 months

 immediately preceding the filing of the Motion to Terminate Parental Rights willfully

 failed to pay a reasonable portion of the cost of care for the minor children although

 she is physically and financially able to do so.”

¶ 24 The location of the trial court’s finding of willfulness has no bearing on its

 efficacy. In re J.S., 374 N.C. 811, 818 (2020). In light of the evidence that respondent-

 mother signed a voluntary support agreement which she never moved to modify or
 IN RE J.K.F., H.N.F., N.L.F.

 2021-NCSC-137

 Opinion of the Court

 set aside, that she had some gainful employment during the relevant period, and that

 she subsequently did not make reasonable payments toward the children’s cost of

 care during the relevant six-month period, we conclude “the trial court did not err in

 finding respondent-mother’s nonpayment to be willful and in concluding that grounds

 existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(3).” In re

 A.P.W., 2021-NCSC-93, ¶ 45.

 III. Conclusion

¶ 25 Because we uphold the trial court’s adjudication under N.C.G.S. § 7B-

 1111(a)(3), we need not review the two remaining grounds found by the court under

 N.C.G.S. § 7B-1111(a)(1)–(2). Respondent-mother offers no argument regarding the

 trial court’s assessment of the children’s best interests at the dispositional stage of

 the proceeding under N.C.G.S. § 7B-1110(a). The order terminating respondent-

 mother’s parental rights in Jack, Hannah, and Nicole is therefore affirmed.

 AFFIRMED.